Alice HARRIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 18553.

Court of Civil Appeals of Texas, Fort Worth.

April 23, 1981.

Rehearing Denied May 21, 1981.

J. W. Richards, II, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and E. Earl Harcrow, Asst. Dist. Atty., Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

January 28, 1981, Alice Harris was committed to Wichita Falls State Hospital for observation and/or treatment for a period not to exceed ninety (90) days. Application for her commitment was made by her husband and her mother, who testified in addition to a court-appointed psychiatrist and Mrs. Harris herself.

Mrs. Harris has appealed the writ of commitment, primarily on grounds of insufficiency of evidence and lack of competency of evidence. She charges the State failed to show by clear and convincing evidence the necessity of her commitment. Mrs. Harris also alleges that the trial court erred in refusing to submit her requested special issues which dealt with her alleged "dangerousness" to herself or to others.

We reverse and vacate the order of commitment.

Temporary involuntary hospitalization for mental illness is governed by the Texas Mental Health Code, Chapter III, Part 2. In accordance therewith, Mrs. Harris' husband, Lawrence Harris, applied to have her committed after she refused to return with him (and her mother, Mrs. Pauline Heitzer) for treatment in Connecticut or New York.

After the application was made, a hearing was held in accordance with the Texas Mental Health Code, and an order was entered under Tex.Rev.Civ.Stat.Ann. art. 5547–38 (1958) "Order upon hearing", which reads in pertinent part:

"(b) If upon the hearing the court finds that the proposed patient is mentally ill and requires observation and/or treatment in a mental hospital for his own welfare and protection or the protection of others, the court shall order that the mentally ill person be committed as a patient for observation and/or treatment in a mental hospital for a period not exceeding ninety (90) days."

■ Art. 5547 thus requires two findings before a writ of commitment can be issued: first, that the proposed patient is mentally ill; second, that hospitalization is necessary either for the proposed patient's welfare and protection or for the protection of others. The standard of proof in such cases is that the evidence is clear and convincing. *State v. Addington*, 588 S.W.2d 569 (Tex. 1979).

Under the facts and circumstances of this case, we are presented with the question of whether the State has sustained its burden of proof in regard to the second requirement, i. e., of showing that hospitalization is necessary either for the proposed patient's welfare and protection or for the protection of others.

At the commitment hearing, testimony was given to a jury by Lawrence Harris and Mrs. Heitzer, by a court-appointed psychiatrist, and by Mrs. Harris herself. The record clearly shows that Mrs. Harris is subject to delusions and that she believes, among other things in a nation-wide conspiracy which prohibits her from obtaining a job or from cashing a monthly check from the German government (which she has routinely sent to her relatives for the past several years for cashing), and that she is convinced that her thoughts are being recorded and played back over the radio. The psychiatrist testified that she is a paranoid schizophrenic and that her condition requires hospitalization and long-term treatment. We believe the record as a whole established that the State carried its burden of proof on the first part of the test, that relating to mental illness.

■ The second part of the test is the provision concerning requirements for the patient's welfare and protection, or the protection of others. Mrs. Harris complains that special issues concerning her alleged "dangerousness", both to herself and to others, were refused by the trial court. We note, however, that the trial court in its charge to the jury (under definitions) included the following:

"In order to find that the proposed patient requires hospitalization for her own welfare and protection or the protection of others you must be convinced by clear and convincing evidence that: a real and imminent danger of injury to self or others will exist if the patient is not hospitalized; the patient, if not hospitalized, will cause injury to self or others; and the proof includes evidence of a recent overt act by the patient showing such a danger, consisting of a threat, attempt, or successful effort to do such harm."

Pertinent thereto is Special Issue No. 2, which the jury answered affirmatively:

"Do you find from clear and convincing evidence that Alice Harris requires hospitalization in a mental hospital for his/her own welfare and protection or the protection of others?"

We hold that inclusion of the requested definition was acceptable and that the trial court did not err in refusing Mrs. Harris' requested special issues. Her fourth point of error is therefore overruled.

■ Related to the issue of Mrs. Harris' "dangerousness" is her first point of error in which she claims that there was insufficient evidence to support the finding of the jury; her second point of error in which she claims that as a matter of law, there was no competent medical or psychiatric testimony to support the jury's findings and her third point of error, in which she complains that the State failed to show by clear and convincing evidence the necessity for a commitment. According to the court's charge, there must be proof of a recent, overt act by the patient showing danger (to herself or to others), consisting of a threat, attempt, or successful effort to do such harm.

Testimony from her husband related that Mrs. Harris threatened suicide when he and her mother informed her that they were insisting she return with them for medical treatment near their homes or be committed to a mental institution in Texas. He knew of no suicide attempts, and Mrs. Harris testified that she was not suicidal. Neither Mrs. Heitzer nor the psychiatrist referred to suicide.

Harris testified that he thought his wife was a danger to herself indirectly because she could not protect herself from her environment. Dr. Lehrer, the psychiatrist, testified that he did not believe she was capable of living by herself, that her existence was very minimal and apparently was deteriorating, and that she could not support herself if called upon to do so. He further testified that he did not believe Mrs. Harris would take her medication on an outpatient basis because she did not believe herself to be sick. Mrs. Heitzer testified that her daughter (Mrs. Harris) was sick, that she had been sick when she last visited her in October, and that she was sure she needs a doctor's care. Mrs. Heitzer also testified that her daughter could not distinguish between truth and imagination.

Mrs. Harris testified to a number of matters, including her opposition to the drug therapy she was on after her prior hospitalization in the East. She also testified that the proposed hospitalization would not be beneficial and that it would hurt her. This summarized the direct evidence relating to Mrs. Harris' need for hospitalization for her own protection and welfare. Much of the evidence concerning her belief in a conspiracy could also be relevant in that it indicates limitation in Mrs. Harris' daily functioning because of her warped perceptions of reality, particularly as it affects her abilities to cash checks and to become employed.

There is also some evidence concerning the need for Mrs. Harris to be hospitalized for the protection of others. Her husband and mother testified that there was a brief physical encounter in response to their insistence that she accompany them home for treatment or they would seek to have her committed in Texas. The "scuffle" lasted "a minute or two". Mrs. Harris testified that when her husband came to Texas to try to force her to return to Connecticut, he blocked her doorway and that she tried to push him aside. (Both she and Harris referred to a hitting episode in 1977 in which she claimed he struck her first before she

struck him with a walking cane used in connection with the husband's broken leg.) Her mother testified that in response to her (the mother's) "agressive" attempts to persuade Mrs. Harris to return to Connecticut, Mrs. Harris had struck her on the hand but that it was not a serious blow. This Mrs. Harris denied, though she claimed that her mother had dared her to do so. Harris testified that he had to separate his wife and her mother and that Mrs. Harris had started tearing her mother's hair. Harris also testified that his wife had stated that she was "going to get even with them", (those in the conspiracy) who were playing tape recordings of her thoughts.

There was no other indication that Mrs. Harris has ever been a danger to her relatives or to strangers.

The evidentiary standards for involuntary commitment for treatment of mental illness are high. In *Lodge v. State*, 597 S.W.2d 773 (Tex.Civ.App.—San Antonio, *aff'd*, Tex., 608 S.W.2d 910, 1980), the court wrote:

> "We need not decide here whether proof that an individual requires hospitalization 'for his own welfare and protection or the protection of others' requires evidence of dangerousness, since in this case, ... there is no testimony which even tends to indicate that hospitalization of appellant is required for her own welfare and protection or the protection of others. *Evidence which merely reflects that the individual 'is mentally ill and in need of hospitalization' is no evidence that the statutory standard has been met."* (Emphasis added.) 597 S.W.2d at 779.

In the instant case, the necessity of protective hospitalization is very much at issue. In *State v. Turner*, 556 S.W.2d 563, (Tex. 1977), the court wrote:

> "The involuntary mental patient is entitled to treatment, to periodic and recurrent review of his mental condition, and to release at such time as he no longer presents a danger to himself or others." 556 S.W.2d 566.

We hold that the record as a whole does not adequately support the finding that Mrs. Harris is a danger to herself or to others. Her condition, though reflecting her need for hospitalization, has never been manifested as a condition as result of which such hospitalization is required either for her own protection or for that of others.

We reverse the judgment and vacate the order of commitment.