**Greg HOHENSTEIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–86–0114–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 30, 1986.

Thomas W. McQuage, Barlow, Todd, Crews & Jordan, Galveston, for appellant.

Michael J. Guarino, Galveston Co. Dist. Atty., Carla Marie Anderson, Roger L. Ezell, Galveston Co. Asst. Dist. Attys., Galveston, for appellee.

Before EVANS, C.J., and WARREN and DUGGAN, JJ.

**OPINION**

EVANS, Chief Justice.

This is an appeal from an order of the Probate and County Court of Galveston County, committing the appellant, Greg Hohenstein, to in-patient mental health services for a period not to exceed 90 days. We affirm.

These proceedings were initiated by the Gulf Coast Mental Health and Mental Retardation Center, on allegations that appellant was mentally ill, likely to cause serious harm to himself or others, and that in the absence of treatment, he would continue to suffer severe and abnormal mental, emotional, or physical distress and deterioration in his ability to function independently. After two hearings were conducted in early January 1986, at which appellant was represented by appointed counsel, the trial court determined that appellant was mentally ill and a danger to himself or to others. On January 9, 1986, the court entered the order in question, directing that appellant be involuntarily committed for a period not to exceed 90 days.

In two points of error, the appellant argues: (1) that there was no clear and convincing evidence that he was dangerous to

himself or to others, and (2) that the State failed to meet its burden of proving those allegations by factually sufficient evidence.

The appellant was released from his involuntary commitment on April 2, 1986, but that fact does not render the appeal moot. *State v. Lodge*, 608 S.W.2d 910, 911 (Tex. 1980). Therefore, we must determine whether the evidence supports the trial court's initial commitment order.

The record indicates that appellant began to manifest psychological problems about a year before the incident resulting in his commitment. Evidently, the appellant had some apartments that were seriously damaged in Hurricane Alicia, and he brought suit to collect the proceeds of his insurance coverage. He eventually became so preoccupied with the litigation, that he developed a feeling that the insurance company was "out to get him." This feeling developed into what was psychiatrically characterized as "bizarre and spreading delusional beliefs." The appellant came to believe that the insurance company was actively trying to harass him, and that it had contacted his construction business suppliers, causing him supply problems and price increases. He believed that the insurance company had arranged for his home to be "bugged," and he became concerned that his father and his wife had been blackmailed into collaborating with the insurance company. He also believed that the insurance company was sending people into his home to spy on him, and that those persons had tampered with his bath tub stopper mechanism so it would not operate properly.

Because of his increasing preoccupation with the insurance company, the appellant developed a feeling of despair, to the point where he speculated that, "maybe he should kill himself, or ... just do away with himself and his family." In late December 1985, the appellant's wife became so alarmed about his condition that she left their home and took the children with her to his parents' home. The appellant later came to his parents' home and, finding his father not at home, he became enraged. He told his mother he would hunt down his father, that she should warn the father and tell him to shoot first, or he, the appellant, would kill him. At that point, the appellant's family contacted the Brazoria County Mental Health authorities, who caused Hohenstein to be transported to the University of Texas Mental Health Facility in Galveston. At the time of his admission, the appellant was "quite enraged," claiming that the mental health deputy had falsely led him to believe that he was being taken to Galveston for counseling, rather than for commitment.

Dr. Robert B. White, a licensed specialist in psychiatry at the Galveston Mental Health Facility, testified that the appellant has a serious mental illness, probably "paranoid schizophrenia," which he described as "grave and progressive," bringing about "delusional ideation of a sort." White opined that because of the appellant's "growing irritability" and "poor impulse control," he posed a "grave risk of harm to himself or others." He said there was a "distinct probability" that without treatment, the appellant would cause harm to himself or to others. White explained that his opinion was based upon the appellant's delusional beliefs, the number of firearms that appellant had at his disposal, and appellant's threatening remarks that had so alarmed his mother and his wife. He believed that the appellant was in need of neuroleptic medication and that his condition would deteriorate without treatment.

During the period of the appellant's commitment, he refused to take any "mind altering ... drugs" and refused a CAT scan because he believed the X-ray might damage his brain. He had become less agitated by the time of the hearing, and had not made any suicidal or threatening remarks since his admission. At the time of the hearing, Dr. White felt it was "extremely risky" to permit appellant to become an outpatient. Dr. Charles Gaston, M.D., a practicing psychologist, visited with the appellant "at some length" after his admission and concurred with all of Dr. White's reasoning and conclusions.

The evidence shows that appellant is mentally ill, and that condition is not disputed by the appellant's brief. The appellant's contention is that there is no "clear and convincing evidence" that his involuntary hospitalization is necessary for his welfare or for the protection of himself or others. Essentially, the appellant's argument is that there is no evidence of any overt acts of violence to himself or to others, and that in the absence of such evidence, the physician's opinion that the patient is "dangerous," is insufficient to support the involuntary commitment order.

In support of appellant's argument, we are referred to two cases, both of which we conclude are distinguishable on their facts. In *Moss v. State*, 539 S.W.2d 936, 949–50 (Tex.Civ.App.—Dallas 1976, no writ), there was medical testimony that the patient was "potentially dangerous," but no factual basis was given in support of that general conclusion. In the present case, the psychiatrist, Dr. White, gave his medical opinion that the appellant was probably dangerous to himself or others, and his testimony was supported by evidence showing the underlying factual basis for his opinion.

In *Harris v. State*, 615 S.W.2d 330 (Tex. Civ.App.—Fort Worth 1981, writ ref'd n.r. e.), the patient was diagnosed as a "paranoid schizophrenic," and her husband testified that she had attempted suicide. Although the patient's husband said he believed his wife was a danger to herself, the medical expert simply stated that she was incapable of living by herself and that she would not take medication on an out-patient basis. The Court of Civil Appeals vacated the order of commitment, holding that while the evidence showed a need for the patient's hospitalization, it was not shown that her condition required hospitalization "either for her own protection or for that of others." *Id.* at 333.

Similarly, in *Lodge v. State*, 597 S.W.2d 773, 779 (Tex.Civ.App.—San Antonio), *aff'd*, 608 S.W.2d 910 (Tex.1980), the evidence was held insufficient because there was no testimony showing that hospitalization of the appellant was necessary for her own welfare and protection or the protection of others. *Id.* at 779.

Here, there was specific evidence that the appellant had threatened to kill himself, his father, and his family. These threats caused his wife to flee her home, taking the children with her, and to seek refuge at the home of the appellant's parents. The psychiatrist's opinion that the appellant was "probably suffering from paranoid schizophrenia," and that he posed a "grave risk of harm to himself or others" was supported by direct evidence of the appellant's threatening remarks. We find the evidence sufficiently clear and convincing to support the physician's opinion that unless the appellant received treatment, there was a "distinct probability" that he would cause harm to himself or to others. We therefore hold that the evidence supports the trial court's conclusion that protective hospitalization was necessary, and we overrule both points of error.

The judgment of the trial court is affirmed.

Justices WARREN and DUGGAN also sitting.