NO. 12-05-00121-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
THE STATE OF TEXAS FOR THE                 §                APPEAL FROM THE 

 
BEST INTEREST AND                                      §                COUNTY COURT AT LAW

 
PROTECTION OF R.B.                                     §                CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant R.B. appeals from the trial court’s order committing him to the Rusk State Hospital
for a period not to exceed ninety days pursuant to section 574.034 of the Texas Health and Safety
Code. In one issue, R.B. challenges the legal and factual sufficiency of the State’s evidence to support
the order of commitment.


 We affirm.
 
Background
            On March 29, 2005, Mike Dorsey filed an “Application for Court Ordered Temporary Mental
Health Services” (the “application”) with the County Clerk of Cherokee County, Texas. The
application stated that R.B. was mentally ill and that he met the criteria set forth in section 574.034
of the Texas Health and Safety Code. At the time the application was filed, R.B. was living at a
private residence and was not charged with a criminal offense. 
            The hearing on the application was held on April 5, 2005. At the end of the hearing, the trial
court found that R.B. was mentally ill and as a result of that mental illness was likely to cause serious
harm to others. See Tex. Health & Safety Code Ann. § 574.034(a)(2)(B) (Vernon 2003). As a
result of the trial court’s findings, R.B. was ordered committed to the Rusk State Hospital for inpatient
care for a period not to exceed ninety days.
 
Burden of Proof and Standard of Review 
            Section 574.034 of the Texas Health and Safety Code contains the criteria for court-ordered
temporary inpatient mental health services. The court may order a proposed patient to receive
temporary inpatient mental health services only if the factfinder concludes from clear and convincing
evidence that the proposed patient is mentally ill and also meets at least one of the additional criteria
set forth in section 574.034(a)(2). Specifically, subsection (a)(2) provides that the factfinder must
conclude that as a result of mental illness, the proposed patient
 
              (A)        is likely to cause harm to himself;
 
              (B)         is likely to cause serious harm to others; or
 
              (C)         is:
 
                            (i)          suffering severe and abnormal mental, emotional, or physical
distress;
 
                            (ii)         experiencing substantial mental or physical deterioration of the
proposed patient’s ability to function independently, which is
exhibited by the proposed patient’s inability, except for reasons of
indigence, to provide for the proposed patient’s basic needs,
including food, clothing, health, or safety; and
 
                            (iii)        unable to make a rational and informed decision as to whether or
not to submit to treatment.


Tex. Health & Safety Code Ann. § 574.034(a)(2) (Vernon 2003).
            The State has the burden of establishing by clear and convincing evidence that the proposed
patient meets at least one of the additional criteria listed in section 574.034(a)(2). Mezick v. State,
920 S.W.2d 427, 430 (Tex. App.–Houston [1st Dist.] 1996, no writ). “Clear and convincing
evidence” is an intermediate standard, falling between the preponderance of the evidence standard of
ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. State v.
Addington, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam). The Texas Supreme Court has defined
“clear and convincing evidence” as “that degree of proof which will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought to be established.” 
Addington, 588 S.W.2d at 570. When court-ordered temporary mental health services are sought, an
additional requirement for clear and convincing evidence is imposed. To be clear and convincing
under subsection (a), the evidence must include expert testimony and, unless waived, evidence of a
recent overt act or a continuing pattern of behavior that tends to confirm
 
(1)the likelihood of serious harm to the proposed patient or others; or
 
              (2)         the proposed patient’s distress and the deterioration of the proposed patient’s ability
to function.


Tex. Health & Safety Code Ann. § 574.034(d) (Vernon 2003).
            In a legal sufficiency review where the burden of proof is clear and convincing evidence, the
reviewing court must consider all of the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex.2002). The reviewing court must assume
that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. 
Id. A court should disregard all evidence that a reasonable factfinder could have disbelieved or found
to have been incredible. Id.
            In addressing a factual sufficiency of the evidence challenge, we must consider all the evidence
in the record, both that in support of and contrary to the trial court's findings. In re C.H., 89 S.W.3d
17, 27-29 (Tex.2002). This court must give due consideration to evidence that the factfinder could
reasonably have found to be clear and convincing. Id. at 25. We must determine whether the
evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of
the State's allegations. Id. We must consider whether disputed evidence is such that a reasonable trier
of fact could not have reconciled that disputed evidence in favor of its finding. In re J.F.C., 96
S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the factfinder. In re
C.H., 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of the witnesses and
the weight to be given their testimony. See id. at 27; In re J.J.O., 131 S.W.3d 618, 632 (Tex.App.–
Fort Worth 2004, no pet.)
The Evidence
            At the beginning of the hearing, R.B.’s attorney stipulated that Dr. Charles Plyler, the State’s
testifying expert and also R.B.’s treating physician at the hospital, was an expert in the field of mental
health care. R.B.’s attorney also stipulated that the “Physician’s Certificate[s] of Medical
Examination for Mental Illness” (the “certificates”), the recommendations of the treatment team, and
medical records of the Texas Department of Criminal Justice-Institutional Division pertaining to R.B.
were business records, but conditioned the stipulation on his right to assert objections to those
documents on the bases of “privilege, prejudice, personal knowledge, hearsay, and relevance.” The
certificates were prepared by Dr. Plyler and a Dr. Cuellar, another doctor who examined R.B. at the
hospital. Dr. Cuellar’s certificate reflects that he examined R.B. on March 28, 2005 and that during
the examination, R.B. told him he saw ghosts and was “rambling non-stop, [and] incoherent.” Dr.
Cuellar’s report also noted that on March 21, R.B. “threatened neighbors with a gun and also
threatened suicide.” His report states that he had diagnosed R.B. as suffering from bipolar I disorder. 
Dr. Cuellar’s report further states that R.B. was mentally ill and was likely to cause serious harm to
himself and others. He also opined that R.B. presented a substantial risk of serious harm to self or
others if not immediately restrained, as demonstrated by 1) R.B.’s behavior and 2) evidence of severe
emotional distress and deterioration in his mental condition to the extent that R.B. could not remain
at liberty.
            Dr. Plyler’s certificate stated that he examined R.B. on March 29 and that his diagnosis of
R.B.’s condition was bipolar disorder, a condition for which he prescribed R.B. antipsychotic
medications. Dr. Plyler also noted that on March 28, R.B. stated that “[t]he police found the gun that
was hid in the garage.” On March 29, Dr. Plyler noted that R.B. had “smeared feces on hospital wall,
flooded hospital room, threatened neighbors with gun, and was verbalizing suicidal ideations.” Dr.
Plyler’s report stated that he believed R.B. was mentally ill and that, as a result of that illness, he was
likely to cause serious harm to himself and others. 
            Dr. Plyler testified at the hearing and stated that R.B. was mentally ill and was suffering from
bipolar disorder. As a result of that mental illness, Dr. Plyler believed that R.B. was likely to cause
serious harm to himself and might cause serious harm to others. Dr. Plyler stated that he arrived at
these conclusions because R.B. “had been threatening neighbors.”


 He further stated that he arrived
at his opinion by reading the “original examining physician’s report from ETMC.” 
            Dr. Plyler noted that since R.B. was admitted to the hospital, he had observed R.B. being
“really loud and intrusive [and] provok[ing] other patients to attack him from time to time.” Dr.
Plyler also stated that R.B. had smeared feces on the hospital bathroom wall and flooded the room. 
He also testified that R.B. “threatened a neighbor with a gun.” Dr. Plyler said that touching feces was
not safe conduct because that conduct could cause the spread of disease and infections. This behavior
was one of the reasons Dr. Plyler thought that R.B. was likely to cause harm to himself and to others. 
            Dr. Plyler reached his conclusions as to R.B.’s mental health after personally examining him
and conducting several interviews with him. Dr. Plyler could not satisfactorily interview R.B. because
although R.B. would respond to his questions, the responses R.B. gave were “nonsensical.” Dr. Plyler
believed that those “nonsensical” responses were the result of R.B’s mental illness. In Dr. Plyler’s
opinion, the Rusk State Hospital was the least restrictive environment for R.B. at that time. The trial
court then admitted the physicians’ certificates into evidence.
            On cross-examination, Dr. Plyler stated that R.B’s “judgment was so poor that he is very likely
to hurt himself.” When asked if R.B. had committed an overt act that would indicate his likelihood
to cause serious harm to himself, Dr. Plyler replied that R.B. had “not done anything, physically, to
harm himself.” He further stated that “[t]here ha[d] been no overt act, unless you consider his
intrusiveness and his irritating manner toward people.” Dr. Plyler acknowledged that R.B. had not
taken any steps to harm himself and had not assaulted anyone during his stay at the hospital.
            R.B. did not testify or put on any evidence; however, the record shows that at multiple times, 
R.B. interrupted the proceedings by speaking unintelligible words and pointing to the ceiling during
Dr. Plyler’s testimony. Both parties subsequently rested and closed, and the trial court signed an order
stating that
 
after considering all of the evidence, including the Certificates, the recommendation for the most
appropriate treatment alternative, if any, and the expert, competent medical or psychiatric testimony, it
appears to the Court that the allegations of the Application and Certificates are true and correct and are
supported by clear and convincing evidence that the Patient is mentally ill, and as a result of that mental
illness the Patient . . . is likely to cause serious harm to others.
 
 
            The order also committed R.B. to the Rusk State Hospital for inpatient care for a period not
to exceed 90 days. That same day, R.B. filed a notice of appeal.
 
Legal Sufficiency of the Evidence
            The evidentiary standards for involuntary commitment are high. Harris v. State, 615 S.W.2d
330, 333 (Tex. Civ. App.–Fort Worth 1981, writ ref’d n.r.e.). The State must produce expert
testimony to support its contention that involuntary commitment is necessary. Tex. Health &
Safety Code Ann. § 574.034(d) (Vernon Supp. 2002). However, an expert diagnosis, without more,
is not sufficient to confine a patient for compulsory treatment. Mezick, 920 S.W.2d at 430. The State
cannot meet its burden of proof without presenting evidence of the behavior of the proposed patient
that provides the factual basis for the expert opinion. Id. To be clear and convincing, the evidence
must show a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood
that the patient will seriously harm himself or others or that his ability to function is deteriorating
because of his distress. Tex. Health & Safety Code Ann. § 574.034(d) (Vernon 2003). The recent
overt act or continuing pattern of behavior shown by the State must also relate to the criterion on
which the judgment is based. See T.G. v. State, 7 S.W.3d 248, 252 (Tex. App.–Dallas 1999, no pet.);
In re Breeden, 4 S.W.3d at 788. 
            In the case at hand, the trial court found that R.B. was mentally ill and as a result of that mental
illness is likely to cause serious harm to others. See Tex. Health & Safety Code Ann.
§ 574.034(a)(2)(B). The State’s only witness, Dr. Plyler, testified that R.B. was likely to cause harm
to others and based this opinion on the fact that R.B. had smeared feces on a hospital wall, flooded
a hospital room, threatened neighbors with a gun, and verbalized suicidal ideations. The foregoing
evidence supports the State’s assertion that R.B. 1) is likely to harm others and 2) has a continuing
pattern of behavior that demonstrates his mental, physical, or emotional distress, deterioration of
independent functioning, or inability to make a rational and informed decision as to whether or not
to submit to treatment. Thus, we conclude that a reasonable trier of fact could have formed a firm
belief or conviction that R.B. is likely to cause harm to others. The evidence is legally sufficient to
support the trial court’s order. R.B.’s sole issue, as it pertains to the legal sufficiency of the evidence,
is overruled.
 
Factual Sufficiency of the Evidence
            In addressing R.B.’s factual sufficiency complaint, we consider the evidence, giving due
consideration to evidence the factfinder could reasonably have found to be clear and convincing. In
re C.H., 89 S.W.3d at 25. 
            The evidence contrary to the trial court’s findings was presented during the cross-examination
of Dr. Plyler. On cross-examination, Dr. Plyler admitted that R.B. had made no overt act during his
stay at the hospital and that he was not present when R.B. threatened his neighbors with a gun. After
reviewing all of the evidence, both in support of and contrary to the trial court’s findings, we hold that
the trial court could have reasonably found that R.B. had a continuing pattern of behavior that
demonstrated his mental distress and deterioration of independent functioning. R.B.’s 1)
unintelligible, nonsensical speaking during the hearing, 2) threatening a neighbor with a gun, 3)
smearing feces on the wall, 4) flooding his hospital room, and 5) verbalizing suicidal ideations support
the trial court’s finding that R.B.’s pattern of behavior meets the statutory requirement for clear and
convincing evidence. Although Dr. Plyler never personally observed 1) an overt act or 2) R.B.
threaten his neighbors with a gun, the evidence that the trial court could not have credited in favor of
its findings is not so significant that it could not reasonably form a firm belief or conviction that R.B.
is mentally ill and is likely to cause serious harm to others. See id. at 27. Thus, the evidence is
factually sufficient to support the trial court’s findings. R.B.’s sole issue, as it pertains to the factual
sufficiency of the evidence, is overruled.
 
Disposition
            The judgment of the trial court is affirmed.
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
Opinion delivered September 7, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
(PUBLISH)