In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00143-CV
______________________________


THE STATE OF TEXAS FOR THE
BEST INTEREST AND PROTECTION OF L.H.
 


                                              

On Appeal from the County Court at Law
Hunt County, Texas
Trial Court No. M-08675


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            L.H. appeals the trial court's order committing her to Terrell State Hospital inpatient mental
health services for a period not to exceed ninety days. She argues the evidence is legally and
factually insufficient to support the trial court's order. Having concluded that the evidence is both
legally and factually sufficient, we affirm the trial court's order. 
I.         FACTUAL BACKGROUND
            At the hearing, the State presented the testimony of Dr. Paul Lee, who testified that L.H. had
been diagnosed with psychotic disorder, not otherwise specified (NOS). When asked about any
overt acts—Dr. Lee interrupted with the following description:
Prior to her coming to the hospital, she was behaving in a very bizarre, paranoid
manner; hiding herself in her home there with her mother; saying people were out
trying to get her. She at one point fashioned a -- according to her mother -- fashioned
a knife out of a razor blade and actually cut her mother with that razor blade and,
according to her mother, cut herself.
She was very religiously preoccupied and was -- I believe the final event that
brought her into the hospital initially was she was out in her yard praying with her
hands up, and the police in that area came and brought her in. Since she's been in the
hospital, she has behaved in a paranoid manner. She's refused any medications or
any suggestions that have been made.
            Dr. Lee also testified that L.H. has been "very intrusive on the unit, inappropriate with other
patients, kissing staff, kissing other patients" on the cheek. He further testified that L.H. admitted
to having fashioned another razor into either a weapon or, from L.H.'s explanation, a caulk-removal
tool. While in the hospital, presumably on an emergency commitment, L.H. removed the razor
blades from a disposable razor. The hospital staff asked her about the razor, and she stated that she
had fashioned the blade into a caulk-removal tool and then, after using it to clean the caulk in her
hospital shower, "flushed the tool" out of concern for other patients in the hospital. 
            On cross-examination, Dr. Lee admitted that he did not attempt to confirm L.H.'s caulking
explanation. He again described her as religiously preoccupied and explained that her preoccupation
led her to make decisions contrary to her own best interests. He also testified that L.H. was in denial
about her illness. He reiterated his testimony about L.H.'s intrusiveness and "inappropriate
boundaries." He stated that he never discussed the cheek-kissing with her and also stated that she
never went beyond kissing on the cheek to kissing on the mouth, groping, or lewd suggestions. 
            Dr. Lee indicated that L.H. described a good relationship with her family until, according to
L.H., her mother concocted this story to get her into drug treatment. Dr. Lee testified that he thinks
L.H. is a danger to herself. He also conceded that he did not know the exact date on which L.H.
allegedly injured her mother and herself. Dr. Lee testified that L.H. had been trying to minister to
fellow patients during her hospital stay. He admitted that, despite concerns regarding her safety and
the safety of the other patients, L.H. is allowed regular access to pens and pencils. He explains that
L.H. is always in the line of the staff's sight. 
            L.H. testified that the only harm she has done to herself is through past substance abuse, and
denied any attempt to otherwise injure herself. She explained that the first weapon she made was
out of concern regarding some associations with a drug dealer and her fear of retaliation after having
begun to cooperate with law enforcement officials regarding the dealer. She explained that she was
putting her prior home improvement experience to work with the razor blade tool at the hospital and
that, after she had cleaned up the caulk, she "flushed the tool" because it could pose a danger to
fellow patients. 
            She testified that she tried to help other patients as best she could and that she was a certified
nurse's assistant. She explained that several patients came to seek her help with food and drinks "and
such." She also described her recent religious conversion. She explained her resistance to
medication in terms of religion and her newly-formed stance against putting "anymore [sic] vile
things in my body." She testified that she had been clean since October "the 27th at 3:10 p.m." She
adamantly denied ever hurting or threatening her mother. She also explained that she was simply
praying in her yard when she was taken in to the hospital and that she regularly kisses people on the
cheek as an expression of "brotherly love" and because she loves everyone in the world.
            In its order of commitment, the trial court found that L.H. "is likely to cause serious harm to
self." Additionally, the trial court found that L.H. "will, if not treated, continue to suffer severe
abnormal mental, emotional or physical distress, is experiencing substantial mental or physical
deterioration of [her] ability to function independently . . . and is unable to make a rational and
informed decision as to whether or not to submit [to] treatment."


 
II.       APPLICABLE LAW
A.        Statutory Requirements
            A court may order a proposed patient to receive temporary inpatient mental health services
only if the fact-finder concludes from clear and convincing evidence that the proposed patient is
mentally ill and also meets at least one of the additional criteria set forth in Section 574.034(a)(2):
 
(2) as a result of that mental illness the proposed patient:
 
(A) is likely to cause serious harm to himself;
 
(B) is likely to cause serious harm to others; or
 
(C) is:
 
(i) suffering severe and abnormal mental, emotional, or physical
distress;
(ii) experiencing substantial mental or physical deterioration of the
proposed patient's ability to function independently, which is exhibited by the
proposed patient's inability, except for reasons of indigence, to provide for the
proposed patient's basic needs, including food, clothing, health, or safety; and
(iii) unable to make a rational and informed decision as to whether or
not to submit to treatment.

Tex. Health & Safety Code Ann. § 574.034 (Vernon 2003). Here, the trial court's written order
affirmatively found the State's allegations under (A) and (C) to be true.
B.        The State's Burden
            The evidentiary standards for involuntary commitment are high. Harris v. State, 615 S.W.2d
330, 333 (Tex. Civ. App.—Fort Worth 1981, writ ref'd n.r.e.). The State has the burden of
establishing by clear and convincing evidence that the proposed patient meets at least one of the
additional criteria listed in Section 574.034(a)(2). See Mezick v. State, 920 S.W.2d 427, 430 (Tex.
App.—Houston [1st Dist.] 1996, no writ). Clear and convincing evidence is that "degree of proof
which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established." State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979).
            When court-ordered temporary mental health services are sought under subsection (a),
specific requirements for clear and convincing evidence are imposed: the evidence must include
expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of
behavior that tends to confirm: "(1) the likelihood of serious harm to the proposed patient or others;
or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to
function." Tex. Health & Safety Code Ann. § 574.034(d). An expert diagnosis, without more,
is not sufficient to confine a patient for compulsory treatment. Mezick, 920 S.W.2d at 430. The
State cannot meet its burden of proof without presenting evidence of the behavior of the proposed
patient that provides the factual basis for the expert opinion. See id. The recent overt act or
continuing pattern of behavior shown by the State must also relate to the criterion on which the
judgment is based. See T.G. v. State, 7 S.W.3d 248, 252 (Tex. App.—Dallas 1999, no pet.).
C.        Standards of Review
            To review the legal sufficiency of the evidence where the burden of proof is clear and
convincing evidence, we consider all of the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or conviction that its
findings were true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the trier
of fact resolved disputed facts in favor of its finding if a reasonable trier of fact could do so, and
must disregard all evidence that a reasonable trier of fact could have disbelieved or found to be
incredible. Id.
            In reviewing factual sufficiency challenges, we review all the evidence in the record, both
that in support of and contrary to the trial court's findings. In re C.H., 89 S.W.3d 17, 27–29 (Tex.
2002). We must give due consideration to evidence the trier of fact could reasonably have found to
be clear and convincing. Id. at 25. Under the clear and convincing standard, we determine whether
the evidence is such that the trier of fact could reasonably form "a firm belief or conviction" as to
the truth of the allegations sought to be established by the State. Id. We must consider whether
disputed evidence is such that a reasonable trier of fact could not have reconciled that disputed
evidence in favor of its finding. J.F.C., 96 S.W.3d at 266. The trial court as the trier of fact is the
exclusive judge of the credibility of the witnesses and the weight to be given their testimony. In re
Estate of Canales, 837 S.W.2d 662, 669 (Tex. App.—San Antonio 1992, no writ).
III.      ANALYSIS
            L.H. does not challenge the determination that she was mentally ill. See Tex. Health &
Safety Code Ann. § 574.034(a)(1). However, she challenges the evidence supporting the findings
required pursuant to Section 574.034(a)(2). In a related appeal, she also challenges the order
authorizing administration of psychoactive medications on the basis that the trial court's commitment
order is not supported by sufficient evidence.
            We disagree with the State's position that the evidence of L.H.'s kissing of other patients
serves as a factual basis for upholding the trial court's order. We conclude that such action, while
perhaps not advisable in a facility for those suffering from mental illnesses, does not sufficiently
confirm the likelihood of harm to L.H. Likewise, we conclude that L.H.'s refusal to take medication
is, alone, insufficient to form the factual basis for the trial court's finding that L.H. posed a danger
to herself.
            In support of her position, L.H. relies on a line of cases holding that the evidence was
insufficient to support the trial court's findings. See In re K.D.C., 78 S.W.3d 543, 550–51 (Tex.
App.—Amarillo 2002, no pet.); K.T. v. State, 68 S.W.3d 887, 893 (Tex. App.—Houston [1st Dist.]
2002, no pet.); T.G. v. State, 7 S.W.3d 248, 252 (Tex. App.—Dallas 1999, no pet.); Johnstone v.
State, 961 S.W.2d 385, 389 (Tex. App.—Houston [1st Dist.] 1997, no writ); Broussard v. State, 827
S.W.2d 619, 622 (Tex. App.—Corpus Christi 1992, no writ); In re J.S.C., 812 S.W.2d 92, 95 (Tex.
App.—San Antonio 1991, no writ); see also J.M. v. State, 178 S.W.3d 185 (Tex. App.—Houston
[1st Dist.] 2005, no pet.) (not designated for publication); For the Best Interest & Prot. of J.J.K. v.
State, Nos. 14-03-00379-CV & 14-03-00380-CV, 2003 Tex. App. LEXIS 10730 (Tex.
App.—Houston [14th Dist.] Dec. 23, 2003, no pet.) (not designated for publication). We reaffirm
the general proposition that evidence of L.H.'s mental illness, which she does not contest on appeal,
without more, does not fulfill the statutory requirement for ordering involuntary inpatient mental
health services under Section 574.034. See K.D.C, 78 S.W.3d at 551; T.G., 7 S.W.3d at 252;
Broussard, 827 S.W.2d at 622.
            However, after carefully reviewing the evidence presented in these cases, we distinguish the
instant case from that line of cases in that, here, we do, in fact, have evidence that L.H. cut herself
and also took actions that would indicate she contemplated doing so again. Such evidence confirms
"the likelihood of serious harm" to L.H. We now focus our attention to the evidence of the two
incidents regarding L.H.'s alteration of razors into weapons and determine whether such evidence
is "a recent overt act . . . that tends to confirm . . . the likelihood of serious harm to [L.H.]." See Tex.
Health & Safety Code Ann. § 574.034(d)(1).
A.        First Incident with Razor
            The first razor incident, again, involved the use of a razor as a weapon in response, according
to L.H., to the danger posed to her by her former association with a drug dealer and her cooperation
with law enforcement officials. The evidence shows that she used this weapon to injure both her
mother and herself. Such evidence would appear to constitute a factual basis for the trial court's
finding that L.H. posed a danger to herself. However, Section 574.034(d) explicitly requires that the
evidence show a "recent overt act . . . that tends to confirm . . . the likelihood of serious harm to
[L.H.]." Tex. Health & Safety Code Ann. § 574.034(d)(1). L.H. concedes that such an act could
confirm the likelihood of harm to herself. Here, the issue concerning this evidence centers on
whether the act was a recent one.
            Dr. Lee admits that he does not know the exact date the incident occurred. On cross-examination, he stated only that the incident occurred "[b]efore she came to the hospital." It is not
clear whether he means "shortly" before or simply at some point before her arrival at the hospital. 
We examine the remainder of the record for evidence regarding when this first incident occurred.
            From L.H., we learn that she made the weapon out of concern for her own safety in the
context of her cooperation with law enforcement in a case against a drug dealer. We do not and
cannot know from this record whether there is any truth to the statement or whether she was
delusional or paranoid. Her testimony is critical, however, in placing this first incident in its proper
time frame.
            L.H. testified that she had been clean and sober since 3:10 p.m. on October 27, 2005,
approximately three weeks before her commitment hearing. She was then asked about the drug
dealer who, allegedly, had been following her:
I hope he's behind bars. Unless my mother's turned in the evidence -- but I was told
to take matters into my own hands. I dropped onto my knees in my mother's yard,
and I got told I was crazy. That was the whole thing. And my mother is behind this. 

By this, the record indicates that she was praying in the yard during the time frame in which she was
in fear of the drug dealer. We know from Dr. Lee's testimony that this public praying was "the final
event that brought her into the hospital initially." So, the record places the razor incident in the
context of her drug recovery, cooperation with authorities, fear of being harmed by the drug dealer,
and the praying-in-the-yard incident, all of which immediately preceded L.H.'s hospitalization.
            So, while Dr. Lee only states that this first razor incident occurred "[p]rior to her coming to
the hospital," the record sufficiently places this incident in the time frame very shortly before she was
taken to the hospital, making this incident a "recent overt act . . . that tends to confirm . . . the
likelihood of serious harm to [L.H.]." Considering all of the evidence in the light most favorable to
the trial court's finding, we determine that a reasonable trier of fact could have formed a firm belief
or conviction that its findings were true.
            L.H. adamantly denies that she has ever cut herself (or her mother). Nevertheless, since the
trial court is the exclusive judge of the credibility of witnesses and the weight to be given their
testimony, we conclude that this disputed evidence would not prevent the trial court from reconciling
the dispute in favor of its finding. See J.F.C., 96 S.W.3d at 266. We, therefore, conclude that the
evidence was factually sufficient.
B.        Second Incident with Razor
            With that in mind, we add that the second incident, in which L.H. fashioned a razor "tool"
while she was in the hospital, also constitutes "a recent overt act . . . that tends to confirm . . . the
likelihood of serious harm to [L.H.]." See Tex. Health & Safety Code Ann. § 574.034(d)(1). 
That is, considering she had done harm to herself with a razor in the recent past, the fact that she
fashioned another device out of a razor tends to confirm Dr. Lee's concerns that L.H. is likely to
harm herself. While the record does not demonstrate that she did any harm to herself with the
second razor or that she did anything other than caulk repair before disposing of it on her volition,
it need not do so. The trial court was authorized to disbelieve that L.H. made the device to clean the
extra caulk out of the shower or, even, that she disposed of it. Moreover, "Texas law does not
require relatives or physicians of the mentally ill (or the courts) to stand idly by until serious harm
occurs . . . . The purpose of temporary commitment is to avoid just such harm." See For the Best
Interest & Prot. of J.L., Nos. 14-05-00360-CV & 14-05-00361-CV, 2006 Tex. App. LEXIS 204, at
*14 (Tex. App.—Houston [14th Dist.] Jan. 12, 2006, no pet. h.) (mem. op.) (not designated for
publication); see In re G.H. v. State, 94 S.W.3d 115, 117 (Tex. App.—Houston [14th Dist.] 2002,
no pet.). Considering the evidence of L.H.'s prior self-inflicted injury, the trial court could
reasonably conclude that this second razor incident confirmed the likelihood of harm to L.H.
IV.      CONCLUSION
            We conclude that the evidence supporting the trial court's finding is both legally and factually
sufficient. We overrule L.H.'s point of error and affirm the trial court's order. 
 


                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          January 18, 2006
Date Decided:             January 25, 2006