

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00117-CV

_____


THE STATE OF TEXAS FOR THE BEST INTEREST
AND PROTECTION OF S.W.


On Appeal from the County Court at Law #2
Hunt County, Texas
Trial Court No. M-10152


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

On September 29, 2011, S.W., a twenty-five-year-old female, appeared in an emergency room in Hunt County complaining of suicidal thoughts and acting aggressively toward emergency-room staff.[1]  Diagnosed with schizoaffective disorder and as bipolar, S.W. has been involuntarily committed to inpatient mental health treatment.[2]  Because we find no evidence in the record of a recent overt act or continuing pattern of behavior that tends to confirm the likelihood of serious harm to S.W. or a substantial deterioration of S.W.'s ability to function independently to provide for her basic needs, we reverse the judgment of the trial court.

At the October 17, 2011, hearing on the State's application for court-ordered extended mental health services,[3] the trial court found that S.W. was mentally ill and that, as a result of her

---

[1] On that occasion, S.W. reported hearing voices telling her to kill herself and was agitated and threatening to the emergency room staff.  Approximately three or four days before the September 29 incident, S.W. had quit taking certain prescription medications after complaining of abdominal pain, stomach cramps, constipation, nausea, headaches, ear pain, and hearing difficulties.

[2] According to S.W.'s counsel, S.W. has now been released by her attending psychiatrist and is residing at her home with her husband.

[3] The trial court took judicial notice of the court's file, which contained two physician's certificates of medical examination for mental illness.  The first certificate, dated September 29, 2011, was signed by Paul Lee, M.D., of Hunt Regional Medical Center.  The certificate indicates that S.W. has been hearing voices telling her to kill herself and that she is extremely agitated and has no insight.  The certificate further reflects the fact that S.W. is "voicing suicidal thoughts" and gives a diagnosis of schizoaffective disorder, bipolar-type.  The second certificate, dated October 16, 2011, was signed by Dante Burgos, M.D., of Hunt Regional Medical Center.  The certificate indicates that S.W. is reporting auditory hallucinations telling her to kill herself, is experiencing hopelessness and suicidal thoughts, and is refusing and/or is resistant to taking needed medications.  This certificate reflects a diagnosis of schizophrenia, undifferentiated type vs. schizoaffective disorder.  While the trial court could not properly take judicial notice of the truth of the allegations contained within the certificates, it was proper to take judicial notice of the file to show the documents were part of the court's files, that they were filed on a certain date, and that the documents were before the court at the time of the hearing.  *See* TEX. R. EVID. 201; *Fuller v. State*, 30 S.W.3d 441, 445 (Tex. App.—Texarkana 2000, pet. ref'd).

mental illness, she was likely to cause serious harm to herself. The trial court further found that S.W. "will, if not treated, continue to suffer severe and abnormal mental, emotional or physical distress and will continue to experience deterioration of the ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment."

A trial court may order the temporary inpatient mental health services of a proposed patient only if the fact-finder concludes, from clear and convincing evidence, that the proposed patient is mentally ill and also satisfies at least one of the subparagraphs (A), (B), or (C) of Section 574.034(a)(2) of the Texas Health and Safety Code, requiring that the proposed patient, due to the mental illness:

(A)   is likely to cause serious harm to himself;

(B)   is likely to cause serious harm to others; or

(C)   is:

     (i)   suffering severe and abnormal mental, emotional, or physical distress;

     (ii)   experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

     (iii)   unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2) (West 2010). If the trial court finds that the proposed patient meets the prescribed commitment criteria, it must then specify which criterion

forms the basis of the decision. TEX. HEALTH & SAFETY CODE ANN. § 574.034(c) (West 2010). Here, mental illness is not disputed, and there is no claim S.W. is a threat to others. Rather, S.W. contends the evidence is legally insufficient to establish, by clear and convincing evidence, a recent overt act or a continuing pattern of behavior that tends to confirm (1) that S.W. was likely to cause serious harm to herself or (2) S.W.'s distress and the deterioration of her ability to function. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(A), (C).

"[A] State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends." *O'Connor v. Donaldson*, 422 U.S. 563, 576 (1975). The requirements for an involuntary commitment are strict because an involuntary commitment is a drastic measure. *In re Breeden*, 4 S.W.3d 782, 789 (Tex. App.—San Antonio 1999, no pet.). The evidentiary standards for involuntary commitment are high. *State ex rel. E.E.*, 224 S.W.3d 791, 794 (Tex. App.—Texarkana 2007, no pet.); *Harris v. State*, 615 S.W.2d 330, 333 (Tex. Civ. App.—Fort Worth 1981, writ ref'd n.r.e.). The State has the burden of establishing by clear and convincing evidence that the proposed patient meets at least one of the additional criteria listed in Section 574.034(a)(2) of the Texas Health and Safety Code. *State ex rel. L.H.*, 183 S.W.3d 905, 909 (Tex. App.—Texarkana 2006, no pet.). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(2)

4

(West 2008); *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010).

To be clear and convincing, the evidence must include, unless waived, expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm "(1) the likelihood of serious harm to the proposed patient or to others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function." TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (West 2010). The threat of harm must be substantial and based on actual dangerous behavior manifested by some overt act or threats in the recent past. *Id.*; *State ex rel. K.D.C.*, 78 S.W.3d 543, 547 (Tex. App.—Amarillo 2002, no pet.). Further, evidence that a person has a mental illness or is exhibiting psychotic behavior alone is insufficient to justify commitment on the grounds of mental distress and the deterioration of the ability to function independently. *T.G. v. State*, 7 S.W.3d 248, 252 (Tex. App.—Dallas 1999, no pet.).

Because the State's burden of proof is clear and convincing evidence, we apply a heightened standard of review. *See K.E.W.*, 315 S.W.3d at 20; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). To review the legal sufficiency of the evidence where the burden of proof is clear and convincing evidence, we review all the evidence in the light most favorable to the finding to determine whether a reasonable fact-finder could have formed a firm belief or conviction that the finding was true. *See K.E.W.*, 315 S.W.3d at 20. Disputed fact questions are resolved in favor of the finding if a reasonable fact-finder could have done so. Contrary evidence is disregarded unless a reasonable fact-finder could not have done so. *City of Keller v. Wilson*, 168 S.W.3d 802,

5

817 (Tex. 2005).

Paul Lee, a medical doctor specializing in psychiatry, is a member of S.W.'s treatment team. Having evaluated S.W. in excess of ten times, Lee determined that S.W. suffered from schizoaffective disorder of the bipolar-type. Lee opined that S.W. suffers from a combination of mood and thought disorder. The thought disorder "represents distortions in thought, delusions, [and] hallucinations." The mood disorder of the bipolar type results in very intense periods of euphoria and intense periods of depression. Lee expressed great concern over the hallucinatory activity. S.W. experienced frequent auditory hallucinations "that expressed telling her to do things, telling her to hurt herself."[4] S.W. also experienced persecutory delusions, in which she feels like people are trying to hurt her. One example of this type of delusion occurred during S.W.'s hospitalization—she reported that a peer followed her onto the unit intending to sexually assault her. S.W. expressed a belief that this peer killed his mother and intended to kill all of the people on the unit.[5]

Undeniably, Lee's testimony tracked the language found in Section 574.034. However, an expert opinion recommending involuntary commitment must be supported by the factual bases on which it is grounded and not simply recite the statutory criteria. *See K.T. v. State*, 68 S.W.3d

---

[4]Both certificates of medical examination for mental illness indicate that S.W. reported experiencing suicidal thoughts. Because the certificates were not admitted as evidence at trial, they cannot be considered in the determination of whether temporary mental health services should be ordered. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(f) (West 2010).

[5]This allegation was investigated and determined to be baseless.

6

887, 893 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Breeden*, 4 S.W.3d at 784. The expert should describe the patient's specific behaviors on which his or her opinion is based. *See K.D.C.*, 78 S.W.3d at 550. Even when the evidence establishes that an individual is mentally ill and in need of hospitalization, such evidence does not meet the statutory standard for involuntary commitment. *K.T.*, 68 S.W.3d at 892. Moreover, psychotic behavior is not evidence of a "continuing pattern of behavior that tends to confirm the likelihood of serious harm to [the proposed patient] or others." *K.D.C.*, 78 S.W.3d at 547 (quoting *T.G.*, 7 S.W.3d at 252).

Lee testified that, as a result of mental illness, S.W. is likely to cause serious harm to herself. This opinion is based on the report of auditory hallucinations telling S.W. to harm herself. In order to justify committing a patient to a mental health facility against his or her will, the threat of harm to the patient or others must be substantial and based on actual dangerous behavior manifested by some overt act or threats in the recent past. *K.D.C.*, 78 S.W.3d at 547. The record indicates only that S.W. may have had suicidal thoughts.[6] S.W. advised the court that she was not hearing voices and that she had no intention of harming herself.[7] Moreover, the record fails to indicate that S.W. engaged in any recent overt act to actually harm herself. *See In re P.W.*, 801 S.W.2d 1, 2 (Tex. App.—Fort Worth 1990, writ denied) (reversing commitment order

[6]In this regard, Lee testified that S.W. reported "frequent auditory hallucinations that expressed telling her to do things, telling her to hurt herself." C.W., S.W.'s husband, testified that S.W. never said anything to him about suicide and he did not believe S.W. was suicidal.

[7]S.W. advised the trial court through her attorney that she was too nervous to speak in the courtroom and wanted her attorney to tell the judge what she would tell the court. There was no objection by the State and the court permitted S.W. to offer her communications through her attorney.

7

despite evidence that P.W. called cousin asking about how to hold pistol to kill herself without causing a lot of pain). Here, there is no indication S.W. actually took steps to implement any suicidal thoughts she may have experienced. There is no evidence S.W. attempted suicide or purposely harmed herself. Moreover, S.W. has not demonstrated a pattern of behavior that tends to confirm she wants to commit suicide. *See State ex rel. Best Interest & Protection of J.T.*, No. 06-08-00007-CV, 2008 WL 617513, at *8 (Tex. App.—Texarkana Mar. 7, 2008, no pet.) (mem. op.) (patient engaged in pattern of attempting suicide that included an almost successful attempt).

Although no evidence suggests that S.W. has attempted to harm herself *directly*, the State nevertheless claims that S.W.'s intrusive and aggressive behavior is likely to result in serious harm to S.W. because such behavior may incite others to harm her.[8] Lee testified that S.W. suffered from persecutory delusions and that she feels as if others are trying to hurt her. On multiple occasions while on the unit, S.W. became agitated, uncontrollable, and intrusive with other patients and with staff. As a result of this behavior, Lee opined that S.W. might invite injury to herself.[9]

---

[8]The State takes the position that the relevant "overt act" is an assault allegedly committed by S.W. in which S.W. was "responding to feelings of somebody trying to hurt her or do bad things to her." The record, however, provides no details of any alleged assault. Moreover, Lee specifically testified that it is not likely that S.W. will cause serious harm to *others*. Because there is no evidence that an alleged assault is probative of a finding that serious harm to S.W. or to others is probable, the record does not support the imposition of temporary mental health services on that basis.

[9]In spite of this opinion, there is no indication in the record that S.W. suffered harm or injury as a result of her delusions or intrusive behavior. Lee testified that it is unlikely that S.W. would harm others.

The State relies on *State v. K.E.W.*, 315 S.W.3d 16 (Tex. 2010), in arguing that behavior that could invite injury to S.W. is sufficient to satisfy the statutory requirement that she is likely to cause serious harm to herself. In *K.E.W.*, the proposed patient was diagnosed with schizophrenia. *Id*. at 18. On a visit to the mental health center as a patient, K.E.W. stated that he wanted to impregnate some of the center's female staff and repeatedly asked for a particular staff member. *Id*. K.E.W. was then taken to the emergency room, where he explained to physicians that he had been chosen to help populate a new race of humans and that there was a group of women he planned to find and impregnate, including his adult stepdaughter. *Id.*

K.E.W.'s treating physician testified at his commitment hearing that, even though K.E.W. never expressed any intention to impregnate anyone against her will, the physician "did not know, given [K.E.W.'s] state of mind, if he would understand that 'no' means 'no.'" *Id*. at 24–25. The court of appeals reversed the trial court's order of temporary inpatient commitment, finding there was no evidence of an overt act or continuing pattern of behavior that tended to confirm either the deterioration of K.E.W.'s ability to function independently or that he was likely to cause serious harm to others. *Id.*

> The high court reversed, finding sufficient evidence of an overt act.
>
> [T]he statute requires evidence of a recent act by the proposed patient, either physical or verbal, that can be objectively perceived and that is to some degree probative of a finding that serious harm to others is probable if the person is not treated. The overt act itself need not be of such character that it alone would support a finding of probable serious harm to others. *See* TEX. HEALTH & SAFETY CODE § 573.034(d)(1).

9

*K.E.W.*, 315 S.W.3d at 24.

The State contends that S.W.'s intrusive and aggressive behavior on "multiple occasions while on the unit" establishes a continuing pattern of behavior which could invite serious harm to S.W. This continuing pattern of behavior, the State maintains, is "to some degree probative of a finding" of serious harm. While it may be probative of some danger, that is not the standard expressed by the Texas Supreme Court. That expressed standard requires that the overt act or pattern of conduct be "to some degree probative of a finding that serious harm to others is *probable* if the person is not treated."[10] *Id*. at 24. Here, Lee testified that the "multiple occasions while on the unit" in which S.W. became "agitated to the point that she was uncontrollable and very intrusive with other patients on the unit and with staff" caused him to conclude that "she might invite injury to herself." Evidence that S.W.'s aggressive behavior *might* invite injury falls short of evidence that serious harm to S.W. is *probable* in the absence of treatment. We, therefore, decline to apply the concept of "invited injury," as the evidence is insufficient to support such a determination.[11]

---

[10]This standard applies to Section 573.034(d)(1) of the Texas Health and Safety Code. *See K.E.W.*, 315 S.W.3d at 23. Section 573.034(d)(1) provides that clear and convincing evidence must include, among other things, evidence of "a recent overt act or a continuing pattern of behavior that tends to confirm . . . the likelihood of serious harm to the proposed patient or others. . . ." TEX. HEALTH & SAFETY CODE ANN. § 574.034(d)(1). While K.E.W. applied the probable-harm standard only to an evaluation of danger to third parties, we see no reason that a different standard should be applied in evaluating the likelihood of danger to the proposed patient—especially considering the statutory language.

[11]The concept of "invited injury" has heretofore been applied by Texas appellate courts on a limited basis in involuntary commitment cases. *See Taylor v. State*, 671 S.W.2d 535, 538 (Tex. App.—Houston [1st Dist.] 1983, no

Because there is no evidence of a recent overt act or continuing pattern of behavior that tends to confirm that S.W. is likely to cause serious harm to herself, we conclude that the evidence is legally insufficient to support that avenue to involuntary commitment. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(A), (d)(1).

There is another ground on which the commitment could be affirmed. The trial court found that S.W. "will, if not treated, continue to suffer severe and abnormal mental, emotional or physical distress and will continue to experience deterioration of the ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment."

Lee testified that S.W. is unable to make a rational, informed decision as to whether to submit to treatment. A person is dangerous to himself or herself if he or she cannot make a rational decision to receive treatment. The threat results from an inability to seek treatment which might improve her condition. *L.S. v. State*, 867 S.W.2d 838, 843 (Tex. App.—Austin 1993, no pet.); *Johnson v. State*, 693 S.W.2d 559, 563 (Tex. App.—San Antonio 1985, no writ).

While S.W. may not always be in a position to make a rational decision to receive treatment, the evidence indicates that she is not alone to make such a decision. C.W., S.W.'s

---

writ) (proposed patient's hostile and provocative behavior toward family and others could foreseeably result in injury to the proposed patient, thus placing proposed patient in need of hospitalization for his or her own protection); *Seekins v. State*, 626 S.W.2d 97, 99 (Tex. App.—Corpus Christi 1981, no writ) (proposed patient's behavior of making obscene gestures and directing profanity at passers-by, shouting of obscenities with clenched fists to customers at store, and "goosing" female customers is provocative conduct which could result in physical danger to proposed patient); *Reed v. State*, 622 S.W.2d 910, 911 (Tex. App.—Fort Worth 1981, no writ) (proposed patient's violent behavior toward others required submission to treatment for her own welfare and protection and/or protection of others). These cases all predate *K.E.W.* and might be seen as violating its probable-harm standard.

husband, testified that he would take S.W. to her psychiatrist—Dr. Burgos—when the need arises, and will make certain S.W.'s medications are refilled in a timely manner. If S.W. were to ever exhibit any suicidal tendencies, C.W. testified that he would get help immediately. C.W. does the cooking and the cleaning, and generally looks after and takes care of S.W.

The record suggests that S.W. is capable of surviving safely in freedom by herself with the help of C.W. Her inability to make a rational decision on her own to receive treatment is thus not a factor which mitigates in favor of concluding that S.W. should be confined against her will on this basis. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(C); *O'Connor*, 422 U.S. at 576.

Lee further testified that, if not treated, S.W. will continue to suffer from mental illness, which will continue to worsen over time. Currently, S.W. is receiving treatment. C.W. testified that he will make sure S.W.'s medications are refilled in a timely fashion and that he will seek treatment for S.W. whenever necessary. Finally, Lee testified that S.W. is able to provide for her basic needs.

Moreover, evidence of hallucinations or delusions, without more, is insufficient to justify involuntary commitment on the grounds of mental distress and the deterioration of the ability to function independently. *E.R.*, 287 S.W.3d 297, 306 (Tex. App.—Texarkana 2009, no pet.). Evidence of S.W.'s delusions and hallucinations confirm that S.W. is mentally ill. However, an expert medical diagnosis of mental illness alone is not enough to support involuntary commitment.

12

*E.E.*, 224 S.W.3d at 794; *see Armstrong v. State*, 190 S.W.3d 246, 252 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (evidence of effects of mental illness does not necessarily establish evidence of substantial mental or physical deterioration unless effects impair ability to function independently or provide basic needs); *see also T.G.*, 7 S.W.3d at 251–52 (physician's diagnosis that appellant suffered from "psychosis NOS" not sufficient to support commitment). Lee's testimony, required under the statute to support commitment, does not provide evidence of a recent overt act or a continuing pattern of behavior confirming S.W.'s distress and deterioration of her ability to function.

The facts on which Lee has based his conclusions do not present clear and convincing evidence to support the trial court's order. Therefore, this record does not support the findings required by Section 574.034 of the Texas Health and Safety Code by clear and convincing evidence, because there was no evidence of a recent overt act or continuing pattern of behavior that tends to confirm the likelihood of serious harm to S.W. or a substantial deterioration of S.W.'s ability to function independently to provide for her basic needs. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a), (d)(1), (2).

We reverse the trial court's judgment and render judgment denying the State's application for mental health services. Having been advised by S.W.'s counsel that S.W. has already been released, we need not order that release. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.033(b) (West 2010); *see also* TEX. R. APP. P. 43.2(c).

Josh R. Morriss, III
Chief Justice

Date Submitted:     December 8, 2011
Date Decided:      December 9, 2011