

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00022-CV

THE STATE OF TEXAS FOR THE BEST INTEREST
AND PROTECTION OF J.G.

On Appeal from the County Court at Law
Cherokee County, Texas
Trial Court No. 40080

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

J.G. appeals[1] from court orders requiring him to undergo extended inpatient mental health treatment at Rusk State Hospital for a period not to exceed twelve months on the grounds that the evidence was legally and factually insufficient to support the judgment.[2] We reverse the trial court's judgment because we find the evidence insufficient to meet the statutory requirements of Section 574.035 of the Texas Health and Safety Code.

Chris Rozelle filed an application for court-ordered extended mental health services on February 19, 2013, claiming that J.G. was "mentally ill and me[t] the criteria as set out in Section 574.035." The application was supported by a physician's certificate of medical examination for mental illness that was completed by R.H. Rodriguez, M.D., who had cared for J.G. at Rusk State Hospital since April 14, 2011. Rodriguez diagnosed J.G. with "Chronic Undifferentiated Schizophrenia; [and] Sickle Cell Disease," which caused J.G. to "remain[] paranoid" and display "refractory symptoms of psychosis" such as "auditory hallucinations and unusual experiences." J.G. was "currently being treated with Seroquel and Ativan." Rodriguez claimed in his physician's certificate that J.G.

> is suffering severe and abnormal mental, emotional or physical distress; is experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for his basic needs, including food, clothing,

[1] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2] In a related appeal in our cause number 06-13-00025-CV, J.G. also challenges the order authorizing the administration of psychoactive medications on the ground that the trial court's order is not supported by sufficient evidence.

health, or safety; and, is unable to make a rational and informed decision as to whether or not to submit to treatment.

Dr. Ming Zhong, M.D., shared Rodriguez' opinion in his February 21, 2013, physician's certificate of medical examination for mental illness, adding that J.G. hears "multiple voices [and] machine drilling sounds." Because "[t]he court may not make its findings solely from the certificates of medical examination for mental illness," the trial court set the matter for hearing on March 5, 2013, based on the information provided in the certificates. TEX. HEALTH & SAFETY CODE ANN. § 574.035(g) (West Supp. 2012).

Rodriguez did not testify at the hearing. Instead, Dr. Larry Hawkins, M.D., filled in for Rodriguez. He confirmed J.G.'s diagnosis and testified:

> [J.G.] would have great difficulty in providing for his own needs. He has -- he came to us from TDCJ Skyview where he had been in prison for 25 years. Came to us two years ago, 2011. Was still quite psychotic at the time. Continues to still hear some voices occasionally. But he's been for the most part very cooperative with treatment. Has not caused any problems here as far as treatment is concerned, but he has -- he doesn't know where his father is. He has not been able to -- we've not been able to come up with any kind of adequate or appropriate placement.

Hawkins added that J.G. "has no support. . . . no money" and would likely deteriorate if he did not receive the requested treatment.

Hawkins believed that J.G. might not be able to make a rational and informed decision on treatment although he had "been cooperative with treatment." Hawkins explained, "There are times when he questions whether he really has a mental illness." Two years ago, J.G. "would question our need to change medicines initially. We had to do a court order for medications and so he is on a court order for medications for that reason and for working -- you know, for getting

3

him on the proper treatment. So he was not always agreeable to some of those things" in the past.

Hawkins testified, however, that now J.G. "takes his medicine. He does what he's supposed to do on the ward. He follows the rules of the ward," and had been cooperative for six months. Hawkins noted that J.G. could bathe and dress himself, but expressed concern about whether he could otherwise manage with "no money, no support, no job, no real history of being able to acquire those things and do those things, and especially with the barrier of mental illness on top of it." In sum, Hawkins concluded that it was "[h]ard to say" and was "unknown" whether J.G. "would follow through" with mental health treatment absent a court order.

J.G. argues that this evidence was insufficient to meet the requirements for an order for extended mental health services as set forth in Section 574.035 of the Texas Health and Safety Code. "The requirements for an involuntary commitment are strict because an involuntary commitment is a drastic measure." *State ex rel S.W.*, 356 S.W.3d 576, 579 (Tex. App.—Texarkana 2011, no pet.); *see In re Interest and Protection of C.O.*, 65 S.W.3d 175, 182 (Tex. App.—Tyler 2001, no pet.); *In re Breeden*, 4 S.W.3d 782, 789 (Tex. App.—San Antonio 1999, no pet.). "The evidentiary standards for involuntary commitment are high." *State ex rel. E.E.*, 224 S.W.3d 791, 794 (Tex. App.—Texarkana 2007, no pet.).

In reviewing legal sufficiency, we analyze "'whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.'" *State ex rel. L.T.*, 386 S.W.3d 271, 274 (Tex. App.—Texarkana 2012, no pet.) (quoting *Williams v. Nationstar Mortg.*, 349 S.W.3d 90, 92–93 (Tex. App.—Texarkana 2011, pet. denied) (citing *City of Keller v.*

4

*Wilson*, 168 S.W.3d 802, 827 (Tex. 2005))). We are to consider all of the evidence in the light most favorable to the verdict, indulging every reasonable inference that would support it. *Id.* (citing *Wilson*, 168 S.W.3d at 822). The fact-finder is the only judge of witness credibility and weight to give to testimony. *Id.* We "'cannot substitute [our] judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement,'" but when the evidence allows only one inference, "'the reviewing court may [not] disregard it.'" *Id.* (quoting *Wilson*, 168 S.W.3d at 822).

In reviewing factual sufficiency challenges, we review all the evidence in the record, both in support of and contrary to the trial court's findings. *Id.* (citing *State ex rel. L.H.*, 183 S.W.3d 905, 910 (Tex. App.—Texarkana 2006, no pet.); *In re C.H.*, 89 S.W.3d 17, 27–29 (Tex. 2002)). "'Under the clear and convincing standard, we determine whether the evidence is such that the trier of fact could reasonably form 'a firm belief or conviction' as to the truth of the allegations sought to be established by the State.'" *Id.* (quoting *L.H.*, 183 S.W.3d at 910). We consider whether the disputed evidence is such that a reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. *Id.*; *see In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

A court may order a patient to receive court-ordered extended inpatient mental health services only if it finds from clear and convincing evidence that:

(1)    the proposed patient is mentally ill;

(2)    as a result of that mental illness the proposed patient:

    (A)    is likely to cause serious harm to himself;

5

(B)      is likely to cause serious harm to others; or

(C)      is:

(i)      suffering severe and abnormal mental, emotional, or physical distress;

(ii)      experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and [is]

(iii)      unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.035(a) (West Supp. 2012).

There was no evidence that J.G. was likely to cause serious harm to himself or others. The State relies on evidence of severe and abnormal mental distress and deterioration of J.G. The evidence establishing J.G.'s mental illness alone was insufficient to justify commitment on the grounds of mental distress and the deterioration of the ability to function independently. *S.W.*, 356 S.W.3d at 579; *State ex rel. J.P.*, No. 12-06-00116-CV, 2006 WL 1791584, at *4 (Tex. App.—Tyler Jun. 30, 2006, no pet.) (mem. op.). To be clear and convincing, the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm "the proposed patient's distress and the deterioration of the proposed patient's ability to function." TEX. HEALTH & SAFETY CODE ANN. § 574.035(e)(2) (West Supp. 2012). With respect to this requirement, only the following testimony was gathered:

6

> Q Was there an overt act or pattern of behavior that led to his hospitalization?
>
> A It's a pattern of behavior. Pattern of symptoms that he displayed and continued to suffer from over the years.

While there was a suggestion that the pattern of behavior was indicative of mental illness, the State provides no examples of such behavior or acts as required by the statute. *Broussard v. State*, 827 S.W.2d 619, 622 (Tex. App.—Corpus Christi 1992, no pet.). "[E]vidence of psychosis, hallucinations, or delusions, without more, cannot justify involuntary commitment." *L.T.*, 386 S.W.3d at 275 (citing *S.W.*, 356 S.W.3d at 579, 583); *see State ex rel. C.B.*, No. 12-11-00089-CV, 2011 WL 3918686, at *3 (Tex. App.—Tyler Sept. 7, 2011, no pet.) (mem. op.). "[T]he State must present evidence of the behavior of the proposed patient that provides the factual basis of the expert opinion." *L.T.*, 386 S.W.3d at 275; *see C.B.*, 2011 WL 3918686, at *3; *C.O.*, 65 S.W.3d at 181.

From the testimony offered, J.G. could bathe and dress himself and had been doing well with his treatment for the past six months; Hawkins stated that it was "unknown" whether J.G. would submit himself to mental health treatment absent the court order. Hawkins also suggested that J.G. would experience difficulty functioning independently because he had no money. A patient's inability to function independently must be due to reasons "except for reasons of indigence." TEX. HEALTH & SAFETY CODE ANN. § 574.035(a)(2)(C)(ii) (West Supp. 2012).

After a review of the seven pages of testimony given at the hearing, we conclude that the State failed to establish by clear and convincing evidence the elements enumerated in Section 574.035 that would justify J.G.'s placement under involuntary inpatient mental health services

for an extended period.  Concluding that the evidence is factually insufficient, we sustain J.G.'s point of error.

We reverse the trial court's judgment, and we order J.G.'s immediate release from involuntary commitment.  *See S.W.*, 356 S.W.3d at 584 (citing TEX. HEALTH & SAFETY CODE ANN. § 574.033(b) (West Supp. 2012); TEX. R. APP. P. 43.2(c)).

Jack Carter
Justice

Date Submitted:     April 29, 2013
Date Decided:       May 2, 2013