ACCEPTED
1-15-00075CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/6/2015 3:02:11 PM
CHRISTOPHER PRINE
CLERK

**1-15-00075-CV**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
5/6/2015 3:02:11 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS

# FOR THE FIRST DISTRICT

# HOUSTON, TEXAS

## IN RE COMMITMENT OF J.S.T.

On Appeal from Cause No. 14-CV-1323
In the 122nd Judicial District Court of Galveston County, Texas;
Honorable Judge John Ellisor

## APPELLEE'S BRIEF

Barry C. Willey
SBN 00788670
Galveston County Legal Department
722 Moody, 5th Floor
Galveston, Texas 77550
(barry.willey@co.galveston.tx.us)
(409) 770-5562
(409) 770-5560 (Fax)
Counsel for Galveston County Health
District

APPELLEE REQUEST ORAL ARGUMENT

i

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| Appellant | J.S.T. |
| Trial Judge | Hon. John Ellisor<br>122nd Judicial District Court |

Trial Counsel for :

| | |
|---|---|
| J.S.T. | David P. Walker<br>1919 Sealy Avenue<br>Galveton, Texas 77550<br>Tel: (409)762-8960<br>Fax: (409) 762-1755 |
| Galveston County Health District: | Paul Ready<br>Barry C. Willey<br>Galveston County Legal Department<br>722 Moody, Fifth Floor<br>Galveston, Texas 77550<br>Tel:(409)770-5562<br>Fax:(409)770-5560 |

Appellate Counsel for:

| | |
|---|---|
| J.S.T.'s: | Mark Aronowitz<br>P.O.Box 1201<br>Texas City, Texas 77592-1201<br>Tel: 713-894-3857<br>markaronowitz@hotmail.com |
| Galveston County Health District: | Barry C. Willey<br>Paul Ready<br>Galveston County Legal Department<br>722 Moody, Fifth Floor<br>Galveston, Texas  77550<br>Tel:(409)770-5562<br>Fax:(409)770-5560<br>barry.willey@co.galveston.tx.us |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................ ii

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES.....................................................................v

ISSUES PRESENTED ........................................................................ vii

STATEMENT OF THE CASE ............................................................. vii

STATEMENT OF THE FACTS ...............................................................2

STANDARD OF REVIEW.......................................................................4

ARGUMENT AND AUTHORITIES .........................................................5

I. THE STATE MET ITS BURDEN OF PROOF ON ALL ELEMENTS OF ITS ACTION FOR INVOLUNTARY COMMITMENT. (ISSUES ONE RESTATED) .......................................................................................................5

    A. The State Showed by Clear and Convincing Evidence That The Patient, As Result of The Communicable Disease, Was Likely to Cause Harm to Himself. .......................................................................................7

    B. The State Showed by Clear and Convincing Evidence that the Patient Would, If Not Treated, Continue to Endanger Public Health. ............9

        1. A Majority of J.T.'s Close Contacts Tested Positive for TB…..9

        2. J.T.'s Failure to Continue Prescribed Treatment Could Result in a Drug Resistant Strain of TB……………………..10

II.     THE TRIAL COURT DID NOT ERR IN REQUIRING THE APPELLANT PATIENT TO PARTICIPATE IN THE TRIAL SOLELY THROUGH VIDEO TELECONFERENCING. (Issues Two Restated) ..................................................11

        A.      The Trial Court Followed the Proper Procedure Under §81.169 Tex. Health &Safety Code............................................................................12

        B.      Attending Trial Through Video Conferencing Did Not Violate J.T.'s Due Process Rights. ...........................................................................13

III.    CONCLUSION AND PRAYER FOR RELIEF ...........................................17

        Certificate Of Service ...................................................................................19

        Certificate of Compliance..............................................................................19

        APPENDIX…………………………………………………………………..20

            1.  §81.169, TEX. HEALTH & SAFETY CODE
            2.  §81.173, TEX. HEALTH & SAFETY CODE

# TABLE OF AUTHORITIES

**CASES**

Federal

Heller v. Doe by Doe, 509 U.S. 312 (1993) ..........................................................15

Mathews v. Eldridge, 424 U.S. 319 (1976). ......................................................14

U.S.v. Baker, 45 F.3d 837 (1995) ............................................................... 14, 15

State

Assoc. Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276 (Tex.1998) ..........5

Cardenas v. State, 30 S.W.3d 384 (Tex.Crim.App.2000) ........................................6

Daniel v. Falcon Interest Realty Corp ...................................................................5

Ex parte Granviel, 561 S.W.2d 503 (Tex.Crim.App.1978) ...................................14

Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,

 960 S.W.2d 41 (Tex.1998) ...............................................................................5

In re Moers, 104 S.W.3d 609 (Tex.App.-Houston [1st Dist.] 2003, no pet.) ...........5

Ortiz v. Jones, 917 S. W. 2d 770 (Tex.1996) ........................................................5

State ex rel. S.W., 356 S.W.3d 576 (Tex. App.-Texarkana 2011) ...........................4

State v. Addington, 555 S.W.2d 569 (Tex. 1979) ...................................................4

State v. K.E.W., 315 S.W.3d 16 (Tex. 2010) .......................................................4, 5

Statutes

§574.202(a) TEX. HEALTH & SAFETY CODE ...............................................12

§81.152, TEX. HEALTH & SAFETY CODE............................................................6

§81.169, TEX. HEALTH & SAFETY CODE........................................... 4, 11, 12

§81.169(c), TEX. HEALTH & SAFETY CODE, ....................................... 11, 13

§ 81.169(d), TEX. HEALTH & SAFETY CODE.................................... 11, 13, 16

§81.169 (i), TEX. HEALTH & SAFETY CODE,...................................... 11, 13

§81.173, TEX. HEALTH & SAFETY CODE.........................................................6, 7

**Rules**

TEX.R.APP. P.38.1(i) ..............................................................................................6

## ISSUES PRESENTED

### ISSUE ONE RESTATED

The Health District met its burden of proof on all the elements of its cause of action for involuntary commitment.

### ISSUE TWO RESTATED

The trial court properly allowed the Appellant to participate in the trial through video teleconferencing.

## STATEMENT OF THE CASE

Nature of the Case:

On December 17, 2014, the Galveston County Health District began proceeding to take J.T. into protective custody for the treatment of tuberculosis ("TB"), by filing its application for temporary protective custody. The case proceeded to a trial to consider the issuance of Orders for Extended Management of a Person with a Communicable Disease under Tex. Health and Safety Code, §81.151, et seq.

Trial by Jury:

On January 12-13, 2015, the trial was conducted in the presence of the jury with the Honorable Judge John Ellisor presiding.

Trial Court Disposition:

The jury returned a unanimous verdict allowing the Court to issue an order of commitment for extended management of a person with communicable disease.

## STATEMENT OF THE FACTS

J.T. (the "Patient") found himself in an unfortunate situation in which he was a carrier of active tuberculosis ("TB") but he unfortunately refused to acknowledge that fact and complete the necessary treatment.

J.T.'s odyssey the through Houston-Galveston medical system began when he sought treatment at Clear Lake Regional Hospital.[1] The Patient presented to the hospital with active TB and a cavitary lesion on his chest X-ray.[2] This was reported to Harris County, which began treating J.T.'s TB. Unfortunately, J.T. only received 10 days of the prescribed six month treatment in May 2014 from Harris County, before he disappeared.[3]

J.T. popped up next on July 7, 2014, when the Galveston County Health District (GCHD) was notified that J.T. was in the Galveston County Jail. The jail had been notified by Harris County that J.T. had a positive culture for TB and needed to receive treatment.[4] J.T. failed to reveal to the Jail staff that he had

---

[1] RR Vol 2, p. 12, L.16-20; (RR V2 12/16-20)
[2] Id.
[3] RR V2 13/14-16.
[4] RR V2, 14/7-19.

2

started treatment for TB in May.[5]  In early July he once again began treatment for TB.[6]  However, in August he began to refuse treatment and did not start taking treatment against until early September.[7]  Since he was scheduled for release from the Galveston County Jail near that time, Harris County was contacted so they could continue to provide medication.[8]  Harris County was unable to locate the defendant once he was released from the Galveston County Jail.[9]

The next contact with JT did not occur until November 2014, when GCHD encountered him at a mission project called "Our Daily Bread" that feeds the homeless in the City of Galveston.[10]  GCHD offers blood tests to the people served by the facility and J.T. asked for a test.[11]  The blood test indicated a positive result for TB infection.[12]

The GCHD district determined that as a result of the positive test and J.T.'s history, that he be restarted on medication.[13]  At this time J.T. was ordered to begin treatment, informed of what was required of him, and informed him of the necessity to continue treatment for a period that could last six or more months.[14]

---

[5] RR V2, 14/2-3.
[6] RR V2, 14/11-25.
[7] RR V2, 15/5-9.
[8] RR V2, 15/10-15.
[9] RR V2, 15/16-17.
[10] RR V2, 15/23-16/8.
[11] RR V2, 16/2-8.
[12] RR V2, 16/15-20.
[13] RR V2, 17/1-14.
[14] RR V2, 17/23-18/4 and Exhibit A, (RR V4, GC0004-GC0006).

He was also informed that failure to follow the order could result in proceedings being filed to obtain an order for protective custody.[15]

It was only seven days before J.T. once again stopped treatment.[16] He was not located again until mid-December, when he landed back in the Galveston County Jail.[17]

## STANDARD OF REVIEW

Commitment of an individual for the management of a communicable disease is conducted under an evidence standard of clear and convincing. TEX. HEALTH AND SAFETY CODE ANN. §81.169 (Vernon 2007). Since the State's burden is clear and convincing evidence, the reviewing court applies a heightened standard of review. *State ex rel. S.W.*, 356 S.W.3d 576 (Tex. App.-Texarkana 2011)

This is the same standard that is used for other civil cases for which there are constitutional implications which require a due process standard greater than the preponderance standard. See *State v. Addington*, 555 S.W.2d 569, 570 (Tex. 1979); *State v. K.E.W.*, 315 S.W.3d 16 (Tex. 2010).

The First Court of Appeals well-articulated the standard of review as follows...

---

[15] RR V4, GC0004-GC0006.
[16] RR V2, 22/1-11.
[17] RR V2, 23/13-16.

4

[w]hen a party without the burden of proof at trial challenges the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Assoc. Indem. Corp. v. CAT Contracting, Inc*., 964 S.W.2d 276, 285-86 (Tex.1998). If there is any evidence of probative force to support the finding, *i.e.,* more than a mere scintilla, we will overrule the issue. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998). In our review of the factual sufficiency of the evidence, we must consider and weigh all of the evidence, and we will set aside a verdict only if the finding is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Ortiz v. Jones,* 917 S. W. 2d 770, 772 (Tex.1996). We review a trial court's conclusions of law de novo. *In re Moers,* 104 S.W.3d 609, 611 (Tex.App.-Houston [1st Dist.] 2003, no pet.).

*Daniel v. Falcon Interest Realty Corp*, 190 S.W.3d 177, 184 (Tex.App.-Houston [1st Dist] 2005, no writ).

As set out in *K.E.W.*, "[w]e resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so." 315 S.W.3d at 20. (citations omitted)

## ARGUMENT AND AUTHORITIES

### I. The State met its burden of proof on all elements of its action for involuntary commitment. (Issue One Restated)

The Communicable Disease Prevention and Control Act, codified in Chapter 81, Texas Health and Safety Code, is a statute that provides for numerous control

measures to be made available for use in protecting public health, including investigation, control, detention, and quarantine. In situations where a local health authority learns that an individual is reasonably suspected of a having a communicable disease that presents a danger to the public health, the statute sets out the requirements an application for a court order for the management of that person. See §81.152, TEX. HEALTH & SAFETY CODE (Vernon 2007).

For an order of extended management of a person, it must be shown from clear and convincing evidence that :

(1) the person is infected with a communicable disease that presents a threat to the public health and, if the application is for inpatient treatment, has failed to follow the orders of the health authority or department;
(2) as a result of that communicable disease the person:
  (A) is likely to cause serious harm to himself; or
  (B) will, if not examined, observed, isolated, or treated, continue to endanger public health; and
(3) the person's condition is expected to continue for more than 90 days.
  §81.173, TEX. HEALTH &SAFETY CODE (Vernon 2007).

Although the patient claims that there was insufficient evidence to obtain an affirmative finding on all of the elements of the action, he has only briefed the issues of actual danger to himself or to that of the public health.[18] An appellant waives an issue on appeal if he fails to adequately brief that issue by presenting supporting arguments and authorities. *See* TEX.R.APP. P.38.1(i); *Cardenas v. State,* 30 S.W.3d 384, 393 (Tex.Crim.App.2000). The

---

[18] Appellant's Brief, p.16

6

appellant neither challenges the diagnosis, nor whether the condition is expected to last for more than 90 days.

A. *The State Showed by Clear and Convincing Evidence That The Patient, As Result of The Communicable Disease, Was Likely to Cause Harm to Himself.*

While the Patient does not dispute the diagnosis of TB in his brief, he does dispute that he would be danger to himself or others as a result of the disease. It is undisputed that J.T. had been diagnosed with TB[19] and had been prescribed a course of treatment for the disease. The authorizing statute only requires it be proven that as a result of the disease, the patient is either likely to cause harm to himself, or will, if not treated, continue to endanger the public health.[20]

Being infected with TB will likely cause harm to the infected person. TB is a very complex disease.[21] It is very slow growing and can spread to any organ of the body.[22] J.T. initially went to the hospital for chest pain. [23] They discovered a cavitary lesion on his lung. While a cavity shown on a chest x-ray is not definitive for a diagnosis of TB, it is top on the list of things to rule out because of its contagious nature.[24] The cavitary lesion is essentially a hole in the lung where the

---

[19] RR V4, GC0007-GC0010 (Applicant's Exhibit B), RR V2, 49/7-50/7
[20] §81.173, Tex. Health & Safety Code.
[21] RR V2, 42/13-19.
[22] RR V2, 42/2-12.
[23] RR V2, 42/2-12.
[24] RR V2, 52/24-53/8.

tuberculosis bacteria began to eat away at the tissue.[25]  In J.T.'s case this finding led to further testing and the final diagnosis of TB.  The infection generally starts in the lungs and spreads from there.[26]  Once a person has active TB, he cannot likely fight off the disease without treatment.[27]

Furthermore, the evidence is undisputed that TB, if left untreated can lead to death of the infected person.[28]  J.T. incorrectly asserts in his brief that he did not have observable ill effects from his condition.[29]  The testimony indicates that J.T. had a cavitary lesion and chest pain in the spring when he was first diagnosed with TB;[30]  regardless, a lack of observable ill effects is not material, since probably half of the patients who have active TB do not exhibit outward symptoms such as coughing up blood or night sweats.[31]

It is axiomatic that a person can be harmed even if they do not die; however, J.T. reasons in his brief that he would not be harmed because when he began to feel ill he would "seek appropriate medical attention and would not let his condition get to the point where he was in danger of dying."[32]  In this case, even if the court does not consider the damaged lung tissue of the cavitary lesion as harm

---

[25] RR V2, 82/4-7.
[26] RR V2, 42/9-12.
[27] RR V2, 29/11-22.
[28] RR V2, 42/4-12, 50/8-10.
[29] Appellant's Brief, p. 17
[30] RR V2, 38/5-7.
[31] RR V2, 38/7-13.
[32] Appellant's Brief, p. 17,

8

to a person, it is just a matter of time until the infection becomes more serious, damaging others organs and leading to death.

B. *The State Showed by Clear and Convincing Evidence that the Patient Would, If Not Treated, Continue to Endanger Public Health.*

J.T. clearly stated in his trial that he did not believe that he had TB.[33] J.T.'s continual denial of his condition and the seriousness of it results in many potential problems, such as exposing others to the bacterium, and not completing the treatment regime, possibly leading to a drug resistant strain of TB.

1. A Majority of J.T.'s Close Contacts Tested Positive for TB.

Eileen Dawley, the Tuberculosis Program Manager for the GCHD and registered nurse, testified that indicated that out of the seven close contacts J.T. had, four of them tested positive for the TB infection.[34] This clearly shows that J.T. was capable of spreading his infection, and had in all likelihood done so, to a majority of his close contacts. Harlan Guidry, M.D., M.P.H., is the County Health Authority and the Director of GCHD. Dr. Guidry testified "yes" in response to the direct question, "[i]n your opinion is it possible for [J.T.] to transmit his tuberculosis to others?"[35] The opinion offered by Dr. Guidry, like all in this case,

---

[33] RR V3, 17/23-25.
[34] RR V2, 24/19-24.
[35] RR V2, 56/12-14.

9

was made with a reasonable degree of medical probability.[36] This undermines the appellant's contention that the best evidence was that he was "probably" contagious.

> 2. J.T.'s Failure to Continue the Prescribed Treatment Could Result in a Drug Resistant Strain of TB.

Compounding the threat J.T. spreading the tuberculosis bacterium, is the very real threat that J.T. could develop a drug resistant strain of TB. It generally takes six to nine months to treat TB, sometimes longer.[37] When the TB organism becomes resistant to drugs that are now typically available to treat it, then that strain is considered drug-resistant.[38]

Lapses in treatment lead to drug resistance TB.[39] For example, treatment for TB lasts six to nine months of continuous everyday treatment. Any lapse in the treatment, such as missing medication or not finishing the course of treatment, allows the organisms in the body to develop a resistance.[40] And if a person develops drug resistant TB, and he spreads that to others, he is spreading his own drug resistant strain, thereby endangering the public health.

---

[36] RR V2, 43/8-19.
[37] RR V2, 44/1-3.
[38] RR V2, 43/20-25.
[39] RR V2, 44/8-10.
[40] RR V2, 44/8-17.

10

J.T. has an established pattern of not completing his treatment. He had stopped treatment three times before these proceedings were filed.[41] These are the types of actions that this procedure is designed to prevent.

## II. The Trial Court Did Not Err in Requiring the Appellant Patient to Participate in the Trial Solely Through Video Teleconferencing. (Issues Two Restated)

The Health& Safety Code sets out provisions relating to a hearing on an application for a court order for the management of a person with a communicable disease. §81.169, *General Provisions Relating to Hearing* (Vernon 2007).

Under these provision the trial may be held at any suitable location and that it should be a in a physical setting that is not likely to have a harmful effect on the public or person.[42] The Health authority is tasked with advising the court o the appropriate control measures to prevent transmission of the communicable disease alleged in the application.[43] Subsection (d) entitles the patient to be present at the hearing, unless that right is waived.[44]

> Notwithstanding Subsection (d), if the health authority advises the court that the person must remain in isolation or quarantine and that exposure to the judge, jurors, or the public would jeopardize the health and safety of those persons and the public health, a judge may order that a person entitled to a hearing may not appear in person and

---

[41] RR V2, 24/25-25/3.
[42] §81.169(a), Tex. Health &Safety Code (Vernon 2007).
[43] §81.169(c), Tex. Health &Safety Code (Vernon 2007).
[44] §81.169(d), Tex. Health &Safety Code (Vernon 2007).

11

may appear only by teleconference or another means that the judge finds appropriate to all the person to speak, to interact with witnesses, and to confer with the person's attorney.

§81.169(i), Tex. Health &Safety Code (Vernon 2007).

The appellant incorrectly relies on §574.202(a) of the Health & Safety Code, which governs the procedures used when a physician or mental health professional is testifying by closed circuit video teleconferencing in a mental health proceeding. The appellant also asserts that proper notice was not given and wrongly claims that full motion video was not used.[45]

A. *The Trial Court Followed the Proper Procedure Under §81.169 Tex. Health &Safety Code.*

On January 9, 2015, counsel for J.T. filed a motion with the Court requesting that the Health Authority to advise the court on appropriate control measures, and if necessary to have J.T. appear by teleconference. In this motion it was related that J.T. did not believe he has TB and that if he does have it, he does not believe he is contagious.[46] The motion went further to indicate that J.T. was disruptive during a prior hearing and trial counsel for J.T. believed that he may be disruptive in front of a jury.[47] The main concern was whether J.T. would keep his mask on if he became agitated during the trial.[48]

---

[45] Appellant's Brief, p19-20.
[46] CR V4, p 53.
[47] CR V4, p 53.
[48] CR V4, p 53.

Prior to the beginning of trial and in accordance with the statute, a hearing was held to determine the necessity of having the patient attend the trial through video teleconferencing.[49] The Galveston County Health Authority, Harlan Guidry, M.D., M.P.H, testified J.T. must remain in isolation or quarantine and that exposure to the Judge, jurors or public would jeopardize the safety of those persons and the public health.[50] The Court also took judicial notice of the probable cause hearing with J.T. in which he threatened to leave the courtroom without permission of the court.[51]

Counsel for J.T. did not object to having J.T. attend trial through video means. The trial court followed the requirements of the proper statute and correctly ordered J.T. to attend trial through video conferencing.

B. *Attending Trial Through Video Conferencing Did Not Violate J.T.'S Due Process Rights.*

Appellant challenges the trial court's actions in requiring him to participate in the trial by video teleconferencing, asserting that it violated his due process rights.[52] As previously discussed, the trial court followed the state required procedural requirements for commitment hearings for persons with communicable diseases. However, since he asserts that his due process rights were violated by the

---

[49] RR V2, 4/2-14, TEX. HEALTH & SAFETY CODE, §81.169(c), (d) and (i).
[50] RR V2, 4/23-5/23.
[51] RR V2, 5/24-6/11.
[52] Appellant's Brief, 19-20.

13

procedure accorded to him by the statute, he is essentially challenging the constitutionality of the statute. Whenever a court is confronted with an attack upon the constitutionality of a statute, it presumes that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex.Crim.App.1978). The burden rests upon the individual who challenges the statute to establish its unconstitutionality. Id.

For the constitutional analysis, in *Mathews v. Eldridge* the United States Supreme Court identified three factors to consider in determining the procedural safeguards due a person whose interests are adversely impacted by government actions:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

424 U.S. 319, 335 (1976). The Fifth Circuit applied this analysis to an involuntary commitment in a mental health case in which video conferencing was utilized. *U.S.v. Baker*, 45 F.3d 837 (1995). In *Baker* an inmate serving time in federal prison for bank robbery was subject to an involuntary commitment for mental health reasons so he could be treated in a proper facility for his mental disease or defect. 45 F.3d at 841. The court rejected the patients contentions that

14

his constitutional rights were violated and held that the commitment hearing conducted using video conferencing did not infringe upon his constitutional or statutory rights.  Id.

The first factor to address is the nature of the interest impacted by the governmental action.  An involuntary commitment of an individual is a substantial impact on a patient's liberty.  However, while as massive as the impact is, it is not as great as the impact inherent in criminal imprisonment. 45 F.3d at 844.  Since a civil commitment is not punitive in nature it is not as onerous as a criminal imprisonment. *Baker,*45 F.3d at 844, citing, *Heller v. Doe by Doe*, 509 U.S. 312, 324 (1993).  Furthermore, a commitment for the treatment of TB lasts only as long as is necessary for the treatment.

The second factor addresses the risk of erroneous deprivations of such interest through the procedures used and the probable value, if any, of additional or substitute safeguards. The risk of erroneous deprivations is low in J.T.'s case.  It is this factor that best illustrates the differences between a civil commitment hearing of this type and a criminal prosecution.  "The goal of a criminal proceeding is to uncover the truth by examining rigorously the reliability of conflicting evidence presented and then engaging in extensive fact finding." *Baker*, 45 F.3d at 844.  However, in J.T's case the determination by the court is essentially medical, i.e., whether or not an individual has a disease that must be treated in an inpatient

15

setting. While there are some factual issues involved in this case, such as whether prior treatment plans of the Health Authority were followed, the essential question remains medical.

As noted by J.T.in his brief, the extensive rights accorded a criminal defendant by the Sixth Amendment are not required to ensure against erroneous deprivations of liberty at civil commitment hearings. Id. Nevertheless, J.T. retained his right to counsel, his ability to confront witnesses, and was able to see the courtroom through the two way video feed and participate in the trial, even giving his testimony.[53]

The third factor addresses the government's interest in utilizing the procedures and the impacts if an alternative is used. This factor is statutorily addressed by the requirement that the Health Authority advise the court on the risks to the persons at the trial and the general public.[54] The trial court followed the statutory guidelines for conducting the trial without objection from J.T. 's counsel during the trial. The Health Authority testified that J.T. must remain in isolation or quarantine and that exposure to the Judge, jurors or public would jeopardize the safety of those persons and the public health.[55] This risk was compounded by J.T.'s non-compliant behavior during his probable cause hearing

---

[53] RR V2, 4/2-7, V3/1-23/7
[54] Tex. Health & Safety Code, §81.169(d)
[55] RR V2, 4/23-5/23.

16

and his threats to walk out of the courtroom. J.T. could not be trusted to stay in the courtroom and could not be trusted to keep his mask on[56]. The trial court evaluated the risks involved and properly determined that the best solution was to have the trial in the courtroom and utilize a video conference technology.

J.T. has not shown how the court's order to conduct the trial by video conference, with the patient at a remote location, caused him harm. The Appellant's brief admits that J.T.'s legal representation was effective, and merely states it would have been better to communicate with Appellant whenever counsel desired instead of during court ordered breaks.[57] During trial there was only one break requested for attorney-client communications and there were no times in the trial when a break for attorney-client communications was requested and refused.[58] The Appellant suffered no impingement of his rights by participating in the trial through video conference.

## III. CONCLUSION AND PRAYER FOR RELIEF

The State proved each element necessary to issue an order of commitment for extended management of a person with a communicable disease and did so by clear and convincing evidence for each element. The potential for harm to the

---

[56] CR, p.53; RR V2, 4/25-6/9.
[57] Appellant's Brief, p. 21.
[58] RR V2, 31/21-32/10.

general public caused by a drug resistant strain of TB is immense. J.T. had a proven history of failing to complete prescribed treatments and was still in denial that he needed to be treated. The Health Authority gave him ample opportunity to comply with its orders to no avail. The situation was a recipe for a catastrophe if the Health Authority did not commit J.T. for involuntary treatment.

Procedurally, J.T. was properly required to participate in his trial by video conference. He had shown his unwillingness to cooperate during a prior hearing, and the potential harm which he could have caused by not cooperating was too great a threat to the health and safety of the other participants at trial and the general public. J.T's due process rights were safeguarded and the procedural statutes were followed.

WHEREFORE, PREMISES CONSIDERED, Appellee prays that this court affirm the order of the trial court.

Respectfully Submitted,

/s/ *Barry C. Willey*
Barry C. Willey
State Bar No. 00788670
Galveston County Legal Department
Galveston County Courthouse
722 Moody, Fifth Floor
Galveston, TX 77550
Tel: (409) 770-5562
Fax: (409) 770-5560

18

## Certificate Of Service

This is to certify the on May 6, 2015, a true and correct copy of the above and foregoing document was served on the counsel as follows:

Mark Aronowitz
P.O.Box 1201
Texas City, Texas  77592
email: markaronowitz@hotmail.com

/s/ *Barry C. Willey*

## Certificate of Compliance

I certify that the foregoing document contains 3929 words.  The text is in Times New Roman 14 point font and the footnotes are in Times new Roman 12 point font.

/s/ *Barry C. Willey*

# APPENDIX

1. §81.169 TEX. HEALTH & SAFETY CODE

2. §81.173 TEX. HEALTH & SAFETY CODE

Vernon's Texas Statutes and Codes Annotated
    Health and Safety Code (Refs & Annos)
        Title 2. Health
            Subtitle D. Prevention, Control, and Reports of Diseases
                Chapter 81. Communicable Diseases
                    Subchapter G. Court Orders for Management of Persons with Communicable Diseases

V.T.C.A., Health & Safety Code § 81.169

§ 81.169. General Provisions Relating to Hearing

Effective: September 1, 2007
Currentness

(a) Except as provided by Subsection (b), the judge may hold a hearing on an application for a court order for the management of a person with a communicable disease at any suitable location in the county. The hearing should be held in a physical setting that is not likely to have a harmful effect on the public or the person.

(b) On the request of the person or the person's attorney, the hearing on the application shall be held in the county courthouse.

(c) The health authority shall advise the court on appropriate control measures to prevent the transmission of the communicable disease alleged in the application.

(d) The person is entitled to be present at the hearing. The person or the person's attorney may waive this right.

(e) The hearing must be open to the public unless the person or the person's attorney requests that the hearing be closed and the judge determines that there is good cause to close the hearing.

(f) The Texas Rules of Evidence apply to the hearing unless the rules are inconsistent with this chapter.

(g) The court may consider the testimony of a nonphysician health professional in addition to medical testimony.

(h) The hearing is on the record, and the state must prove each element of the application criteria by clear and convincing evidence.

(i) Notwithstanding Subsection (d), if the health authority advises the court that the person must remain in isolation or quarantine and that exposure to the judge, jurors, or the public would jeopardize the health and safety of those persons and the public health, a judge may order that a person entitled to a hearing may not appear in person and may appear only by teleconference or another means that the judge finds appropriate to allow the person to speak, to interact with witnesses, and to confer with the person's attorney.

**Credits**

Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989. Amended by Acts 2001, 77th Leg., ch. 1420, § 10.0001, eff. Sept. 1, 2001; Acts 2007, 80th Leg., ch. 258, § 14.12, eff. Sept. 1, 2007.

**Editors' Notes**

### REVISOR'S NOTE

### 2010 Main Volume

The source law refers to the "rules of evidence applicable in civil litigation." The revised law omits this provision and substitutes a reference to the Texas Rules of Civil Evidence because those rules are the rules applicable to civil litigation.

V. T. C. A., Health & Safety Code § 81.169, TX HEALTH & S § 81.169
Current through the end of the 2013 Third Called Session of the 83rd Legislature

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
>   Health and Safety Code (Refs & Annos)
>     Title 2. Health
>       Subtitle D. Prevention, Control, and Reports of Diseases
>         Chapter 81. Communicable Diseases
>           Subchapter G. Court Orders for Management of Persons with Communicable Diseases

V.T.C.A., Health & Safety Code § 81.173

§ 81.173. Order for Extended Management

Currentness

(a) The jury, or the judge if the right to a jury is waived, may determine that a proposed patient requires court-ordered examination, observation, isolation, or treatment only if the jury or judge finds, from clear and convincing evidence, that:

(1) the person is infected with a communicable disease that presents a threat to the public health and, if the application is for inpatient treatment, has failed to follow the orders of the health authority or department;

(2) as a result of that communicable disease the person:

(A) is likely to cause serious harm to himself; or

(B) will, if not examined, observed, isolated, or treated, continue to endanger public health; and

(3) the person's condition is expected to continue for more than 90 days.

(b) The jury or judge must specify each criterion listed in Subsection (a)(2) that forms the basis for the decision.

(c) The court may not make findings solely from the affidavit of medical evaluation, but shall hear testimony. The court may not enter an order for extended management unless appropriate findings are made and are supported by testimony taken at the hearing. The testimony must include competent medical testimony.

(d) An order for extended management shall state that examination, treatment, and surveillance are authorized for not longer than 12 months.

(e) The department, with the cooperation of the head of the facility, shall submit to the court a general program of treatment to be provided. The program must be submitted not later than the 14th day after the date the order is issued and must be incorporated into the court order.

**Credits**

Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989. Amended by Acts 1997, 75th Leg., ch. 242, § 12, eff. May 23, 1997.

V. T. C. A., Health & Safety Code § 81.173, TX HEALTH & S § 81.173
Current through the end of the 2013 Third Called Session of the 83rd Legislature

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.